Lynda T Bui, Trustee
3550 Vine Street, Suite 210
Riverside, CA 92507
Telephone:    (949) 340-3400
Facsimile:    (949) 340-3000
Email: Trustee.Bui@shbllp.com

Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>**DAVID K. SHONO AND SHEILA L. SHONO,**<br><br>Debtors. | Case No.   6:16-bk-14437-MJ<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S MOTION FOR ORDER:**<br><br>**(1) AUTHORIZING THE SHORT SALE OF REAL PROPERTY OF THE ESTATE FREE AND CLEAR OF LIENS PURSUANT TO BANKRUPTCY CODE §§ 363(b) AND 363(f);**<br><br>**(2) APPROVING PAYMENT OF REAL ESTATE COMMISSION; AND**<br><br>**(3) GRANTING RELATED RELIEF INCLUDING USE OF SALE PROCEEDS TO REIMBURSE TRUSTEE FOR ACTUAL COSTS INCURRED**<br><br>MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF LYNDA T. BUI AND MATT VANDERBEEK IN SUPPORT THEREOF<br><br>**Real Property located at:**<br>**11412 Morning Star Lane**<br>**Moreno Valley, CA 92557**<br><br>**Hearing Date:**<br>Date: April 18, 2017<br>Time: 10:00 a.m.<br>Place: Courtroom 301<br>        3420 Twelfth Street<br>        Riverside, CA 92501 |

**LYNDA T. BUI,
CHAPTER 7 TRUSTEE**
3550 Vine Street
Suite 210
Riverside, CA 92507

1

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

1   **TO THE HONORABLE MEREDITH A. JURY, UNITED STATE BANKRUPTCY**

2   **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE DEBTORS AND**

3   **ALL CREDITORS AND OTHER INTERESTED PARTIES AND THEIR COUNSEL OF**

4   **RECORD:**

5          Lynda T. Bui, the Chapter 7 trustee ("Trustee") for the bankruptcy estate

6   ("Estate") of David K. Shono and Sheila L.Shono ("Debtors"), brings this *Chapter 7*

7   *Trustee's Motion for Order: (1) Authorizing the **Short Sale** of Real Property of the Estate*

8   *Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b) and 363(f); (2)*

9   *Approving Payment of Real Estate Commission; and (3) Granting Related Relief*

10  *Including Use of Sale Proceeds to Reimburse Trustee for Actual Costs Incurred* ("Sale

11  Motion") and respectfully represents as follows:

12                                  **I.      BACKGROUND**

13         The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on

14  May 17, 2016 ("Petition Date").

15         The last date to file claims in the case was September 26, 2016.  Government

16  claims were due by November 14, 2016.   The Court's Claims Register indicates there

17  have been three general unsecured claims filed totaling $5,070.34.

18         The Debtor lists ownership interest in the real property located at 11412 Morning

19  Star Lane, Moreno Valley, California 92557 ("Property") on their Schedule A/B, item 1.

20  On their Schedule C, the Debtors claimed a $3,233 exemption in the Property under

21  C.C.P §703.140(b)(1).

22         On their Schedule A/B, the Debtors valued their interest in the Property at

23  $270,000   and listed liens on their Schedule D in favor of the following Secured

24  Creditors: WFHM ("Secured Creditor") with an amount owing of $266,767.00, and

25  Chase[1] with an amount owing of $0.00.

26         A Preliminary Title Report on the Property dated January 24, 2017 ("Title

27  Report") is attached to the Declaration of Lynda T. Bui ("Bui Declaration") as **Exhibit 1**.

28

---

[1]        Chase is not listed on the Title Report attached as Exhibit 1 to the Bui Declaration.

**LYNDA T. BUI,
CHAPTER 7 TRUSTEE**
3550 Vine Street
Suite 210
Riverside, CA 92507

2

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

1    The outstanding liens against the Property are as shown on the Title Report.

2        Based on the Debtor's Schedules and the Title Report, the Property is over-

3    encumbered.  In addition, the Trustee is advised that (i) the Debtors are behind on the

4    mortgage as evidenced by the Title Report which indicates a Notice of Default was

5    recorded on April 27, 2016 (less than 30 days prior to the Petition Date), (ii) one of the

6    reasons the Debtors filed their bankruptcy was to stop the foreclosure sale, and (iii) the

7    Debtors do not want a foreclosure on their record and would like the Trustee to short

8    sell the Property.

9        On August 10, 2016, 2016, the Trustee filed an application (docket 18) for

10    authority to employ the Broker Team of Pro Realty Group and BK Global Real Estate

11    Services to the assist the Trustee in the listing, marketing and negotiating a short sale of

12    the Estate's interest in the Property. A Court order approving the Broker Team's

13    employment was entered on September 6, 2016 (docket 24).   The Court order

14    approving the Broker Team's employment states that the Court will not approve a short

15    sale of the Property if the Debtors desire to maintain it as their homestead.  Attached as

16    **Exhibit 3** to the Bui Declaration is a true and correct copy of correspondence signed by

17    the Debtors consenting to the short sale and agreeing they shall not be entitled to any

18    claim of exemption in the funds paid to the Estate through the short sale.  Through the

19    sale of the Property approved by the Secured Creditor, the Debtors will be receiving a

20    HAFA relocation assistance payment of $10,000.00.

21        **II.    RELIEF REQUESTED**

22        Through this Sale Motion, the Trustee seeks authorization to sell the Property,

23    subject to written approval of the Secured Creditor.   A true and correct copy of the

24    Secured Creditor's written approval is attached as **Exhibit 5** to the Bui Declaration. The

25    Trustee's Broker Team has negotiated a sale price approved by the Secured Creditor

26    that provides for the following:

27        • **Payment of all expenses associated with the short sale, including (i)**

28        **payment of a maximum 6% real estate brokerage commission to the**

**LYNDA T. BUI,**
**CHAPTER 7 TRUSTEE**
3550 Vine Street
Suite 210
Riverside, CA 92507

3

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

1   **Broker Team and reimbursement of the Broker Team's out-of-pocket**

2   **expenses, (iii) a HAFA relocation assistance payment of $10,000.00 to**

3   **the Debtors, <u>and</u> (iv) a fee for the Estate of $12,000.00, to be paid by**

4   **the buyer at the close of escrow to provide for meaningful distribution**

5   **on allowed unsecured claims**.  Thus, the Property will not be sold unless

6   the Estate receives $12,000.00.   The Trustee will use the funds for

7   payment of administrative claims and allowed unsecured claims.  As is this

8   Trustee's practice, if necessary, she and her professionals will reduce their

9   fees as necessary to ensure a meaningful distribution.

10  • Upon close of escrow, the liens of the Secured Creditor will be released

11  and all of their claims against the Property and the Estate with respect to

12  the Property (including any deficiency claims resulting from the Trustee's

13  sale of the Property), will be waived.

14  • Pursuant to Bankruptcy Code sections 363(f)(1) and 363(f)(5) any and all

15  liens that are junior to that of the Secured Creditor, including Chase or

16  current holder of the second trust deed on the Property (collectively the

17  "Junior Liens") will be released, discharged and terminated at the close of

18  escrow to the extent they are not satisfied or released prior to closing, and

19  the Property will be sold free and clear of the Junior Liens and the Junior

20  Liens will not attach to the sale proceeds.

21  The Trustee believes that it is in the best interest of the Estate and its creditors to

22  short sell the Property as proposed herein.  The alternative is to file a no asset report

23  and creditors will not receive anything.

24  Nothing in the Sale Motion is intended to impair any lienholder's' right to seek

25  relief from the automatic stay or to foreclose on the Property.

26  Pursuant to Local Bankruptcy Rule 6004-1(g), once the short sale closes, the

27  Trustee will file with the Court a *Report of Sale* which details the sale terms approved by

28  the Secured Creditor.

**LYNDA T. BUI,
CHAPTER 7 TRUSTEE**
3550 Vine Street
Suite 210
Riverside, CA 92507

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

1    ### III.    ARGUMENT

2    **A.    There is a Good Business Reason for the Sale and the Sale is in the Best**

3    **Interest of the Estate.[2]**

4    The duties of a trustee in a Chapter 7 filing are enumerated in 11 U.S.C. §704,

5    which provides in relevant part as follows:

6    (a) The trustee shall—

7    (1) collect and reduce to money the property of the estate for
8    which such trustee serves, and close such estate as
     expeditiously as is compatible with the best interests of
     parties in interest;
9
     (2) be accountable for all property received;
10

11    11 U.S.C. §704(a).  Further, the Trustee, after notice and hearing, may sell property of

12    the estate.  11 U.S.C. § 363(b).  Courts ordinarily will approve a proposed sale if there is

13    a good business reason for the sale and the sale is in the bests interests of the estate.

14    *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991); *In re*

15    *Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983).  In this case, the sale is anticipated to

16    net the Estate $12,000.00 from fee that the buyer will pay as part of the short sale.

17    **B.    The Proposed Sale Should be Allowed Free and Clear of Liens**

18    Bankruptcy Code Section 363(f) allows a trustee to sell property of the

19    bankruptcy estate "free and clear of any interest in such property of an entity," if any one

20    of the following five conditions is met:

21    (1)    applicable non-bankruptcy law permits a sale of such
       property free and clear of such interest;
22
       (2)    such entity consents;
23
              […]
24
       (5)    such entity could be compelled, in a legal or equitable
25     proceeding, to accept money satisfaction of such interest.

26    11 U.S.C. § 363(f).

27
       _____

28    [2]    Although Local Bankruptcy Rule 6004-1(c)(2)(C) does not require that a memorandum of points
      and authorities be filed in support of the Motion, the Trustee is nevertheless submitting one.

**LYNDA T. BUI,**
**CHAPTER 7 TRUSTEE**
3550 Vine Street
Suite 210
Riverside, CA 92507

5

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

1    Section 363(f) is written in the disjunctive and thus only one of the enumerated

2  conditions needs to be satisfied for Court approval to be appropriate.  The Secured

3  Creditor has approved the short sale and therefore the Trustee will have satisfied §

4  363(f)(2).

5    With respect to Junior Liens, if any, (to the extent they are not satisfied or

6  released prior to closing), the Trustee proposes to sell under § 363(f)(1) and/or 363(f)(5)

7  as in California, judicial and non-judicial foreclosures can be used to wipe out the Junior

8  Liens. *See* Bankruptcy Code section 363(f)(1) (stating that a trustee may sell property of

9  the estate free and clear of liens or other interest when applicable nonbankruptcy law

10  permits such a sale free and clear of liens and interests).  The BAP in *Clear Chanel*

11  stated that an example of a section 363(f)(1) sale is the Uniform Commercial Code

12  section 9-320, which permits a sale free and clear of a consensual security interest if

13  the collateral is sold in the ordinary course of business of the debtor.  *See Clear*

14  *Channel Outdoor, Inc. v. Knupfer* (*In re* PW, LLC), 391 B.R. 25, 41 (9th Cir B.A.P.

15  2008), fn. 21; Cal. Civ. Code §2924 *et seq.*    Similarly, Bankruptcy courts have

16  expressed that the availability of foreclosure sales outside of bankruptcy represent a

17  "legal or equitable proceeding", thus allowing a bankruptcy trustee to sell the subject

18  property free and clear of liens under § 363(f)(5).  See e.g*., In re Jolan, Inc*., 403 B.R.

19  866, 869-870 (Bankr. W.D. Wash,. 2009); *In re Boston Generating, LLC*, 440 B.R. 302,

20  333 (Bankr. S.D.N.Y. 2010); *In re Aerisa, Inc*., 2:09-bk-18456-RJH (Bankr. D. Ariz).

21    In this case, if the Secured Creditor, the senior lienholder on the Property,

22  elected to foreclose on its interest outside of bankruptcy, every junior interest in the

23  Property, including the Junior Liens, would be extinguished notwithstanding the fact that

24  the foreclosure sale price may or may not pay such extinguished interests in full, or at

25  all.  In such a foreclosure proceeding, the Junior Liens would be forced to accept the

26  distribution allowed by the resulting foreclosure sale price, in full satisfaction of its

27

28

LYNDA T. BUI,
CHAPTER 7 TRUSTEE
3550 Vine Street
Suite 210
Riverside, CA 92507

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

1   released lien.[3]  This hypothetical foreclosure sale situation clearly meets each element

2   of section 363(f)(5) to authorize the sale of the Property free and clear of all interests, as

3   it actively demonstrates that a junior interest such as the holders of the Junior Liens

4   herein "could be compelled, in a legal or equitable proceeding [i.e. the foreclosure sale],

5   to accept money satisfaction [i.e. the distribution allowed pursuant to the foreclosure

6   sale price]  of such  interest." 11 U.S.C. § 363(f)(5).

7          Accordingly, the Court has the authority to approve the sale of the Property free

8   and clear of the Junior Liens under Bankruptcy Code sections 363(f)(1) and/or 363(f)(5).

9   **C.**     **The Court has Authority to Waive the Fourteen-Day Stay of Sale.**

10  Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the

11  use, sale or lease of property other than cash collateral is stayed until the expiration of

12  14 days after entry of the order, unless the Court orders otherwise." Fed. Rule Bankr. P.

13  6004(h).  The Trustee desires to close the sale of the Property as soon as practicable

14  after entry of an order approving the sale.  Accordingly, the Trustee requests that the

15  Court, in the discretion provided it under Federal Rule of Bankruptcy Procedure

16  6004(h), waive the fourteen-day stay requirement.

17                              **IV.**     **CONCLUSION**

18          **WHEREFORE,** based upon the foregoing, the Trustee respectfully submits that

19  good cause exists for granting the Sale Motion and requests that the Court enter an

20  order which provides as follows:

21          1.     Authorizing (i) the Trustee to short sell the Property on an as-is, where-is

22  basis, without any warranties or representations, to a buyer approved by the Secured

23  Creditor ("Approved Buyer"), in an amount approved by Secured Creditor, under the

24  terms and conditions set forth above and as approved by the Secured Creditor,

25  including (i) authorizing the Trustee to comply with any written short sale approval letter

26  from the Secured Creditor, (ii) Secured Creditor pay all customary and normal closing

27  ―――――――――――――――

28  [3]     In the hypothetical foreclosure setting for a money satisfaction of the Secured Creditor's
interest, the holders of the Junior Liens may still have general unsecured claims against the
Estate for the amounts that are not paid.

LYNDA T. BUI,
CHAPTER 7 TRUSTEE
3550 Vine Street
Suite 210
Riverside, CA 92507

7

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

costs at close of escrow, including a real estate commission of no more than 6%, (iii) upon close of escrow, the liens of the senior Secured Creditor shown on the Title Report are released or paid and all of their claims against the Property and the Estate with respect to the Property (including any deficiency claims resulting from the Trustee's sale of the Property), will be waived prior to closing or at the time of closing; (iv) approving the sale of the Property free and clear of any and all Junior Liens, if any, (to the extent they are not satisfied or released prior to closing) pursuant to Bankruptcy Code §§ 363(f)(1) and 363(f)(5), and (v) approve the payment of $12,000.00 to the Estate through the short sale transaction.

2.      Authorize the Trustee to execute any and all documents to effectuate the short sale as proposed in the Sale Motion and approved by the Secured Creditor.

3.      Waiving the fourteen day stay of the order approving the sale of the Property under Federal Rules of Bankruptcy Procedure 6004(h).

4.      Trustee's compliance with Local Bankruptcy Rule 6004-1(g) to file a Report of Sale detailing the terms of sale with the Court once the sale closes.

5.      For such other and further relief as the Court deems just and proper under the circumstances of this case.

Dated:  March 22, 2017            /s/ Lynda T. Bui

Lynda T. Bui, solely in her capacity as the Chapter 7 Trustee for the bankruptcy estate of *In re David K. Shono and Sheila L. Shono,* Case No. 6:16-bk-14437-MJ

LYNDA T. BUI,
CHAPTER 7 TRUSTEE
3550 Vine Street
Suite 210
Riverside, CA 92507

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

# DECLARATION

1

## **DECLARATION OF LYNDA T. BUI**

2      I, Lynda T. Bui, declare:

3      1.      I am the duly appointed, qualified and acting Chapter 7 trustee for the

4 bankruptcy estate ("Estate") of *In re David K. Shono and Sheila L. Shono* ("Debtors"),

5 Case No. 6:16-bk-14437-MJ.  I have personal knowledge of the facts set forth herein,

6 and if called and sworn as a witness, I could and would competently testify thereto.

7      2.      I make this Declaration in support of my *Chapter 7 Trustee's Motion for*

8 *Order: (1) Authorizing the **Short Sale** of Real Property of the Estate Pursuant to*

9 *Bankruptcy Code Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b) and*

10 *363(f); (2) Approving Payment of Real Estate Commission; and (3) Granting Related*

11 *Relief Including Use of Sale Proceeds to Reimburse Trustee for Actual Costs Incurred*

12 ("Sale Motion").   All capitalized terms not otherwise defined herein shall have the

13 meaning set forth in the Sale Motion.

14      3.      Attached hereto as **Exhibit 1** is a true and correct copy of the Preliminary

15 Title Report for the Property dated January 24, 2017.

16      4.      Attached hereto as **Exhibit 2** are true and correct copies of the Debtors'

17 Schedules A/B, C and D**.**

18      5.      Attached here as **Exhibit 3** is a true and correct copy of correspondence

19 dated March 22, 2017, signed by the Debtors consenting to the short sale of the

20 Property and agreeing they shall not be entitled to any claim of exemption in the funds

21 paid to the Estate through the short sale.

22      6.      Attached here as **Exhibit 4** is a true and correct copy of the short sale

23 Real Estate Contract and other documents in support of the sale of the Property.  The

24 buyer is identified as **Global AZ Investing, Zamina Azadzoy, Vice President** and is

25 the highest offer I received.  These documents have been submitted to the Secured

26 Creditor for review and approval.

27      7.      The Secured Creditor has given approval for a short sale, which expires

28 on May 16, 2017.  Attached here as **Exhibit 5** is a copy of the Approval Letter form the

**LYNDA T. BUI,
CHAPTER 7 TRUSTEE**
3550 Vine Street
Suite 210
Riverside, CA 92507

9

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

1  Secured Creditor.  I have filed this Sale Motion to obtain an order approving the short

2  sale of the Property on an as is where is basis, to a buyer approved the Secured

3  Creditor in an amount approved by the Secured Creditor and that results in the Estate

4  receiving at least $12,000.00.

5      8.    I am seeking to sell the Estate's interest in the Property as discussed in

6  the Sale Motion, *subject to approval by the Secured Creditor*.  I believe the short sale is

7  in the best interest of the Estate as I will create "equity" through the short sale where

8  there was none.

9      9.    The following information is being provided pursuant to Local Bankruptcy

10  Rule 6004-1(c)(2)(b).  I obtained the assistance of my Broker to attempt to short sell the

11  Property.    Based on the Broker Team's review of the Property, the Broker Team

12  advised that the value of the Property was approximately $239,000.00.  The best offer

13  received for the Property is from **Global AZ Investing, Zamina Azadzoy, Vice**

14  **President** for $239,000.00.  Because the Property is over-encumbered, I can only sell it

15  if the Secured Creditor approves the short sale.  Every mortgage lender has its own

16  procedure for approving short sales and I have asked my Broker Team to submit a

17  declaration detailing the general procedure and process of such sale for the Court.

18      10.    Unlike traditional sales, this short sale is not subject to traditional

19  overbidding; instead, it is subject to any requirements of the Secured Creditor seeking

20  the highest and best offer and one that is consistent with its own appraisal of the

21  Property.   I have only received the one offer for the Property for $239,000.00.  I have

22  not been contacted by any other bidders for the purchase of the Property.  The Secured

23  Creditor, who has complete and sole authority, will determine what sale price it will

24  approve based on its own procedures, which routinely include its own appraisal, so I do

25  not believe a traditional overbid process is necessary or appropriate as the highest price

26  I obtain will still need to be subject to the Secured Creditor's approval.

27      11.    The sale is in the best interest of the Estate because the Estate is

28  anticipated to receive at least $12,000.00.  Because I have created "equity" where there

LYNDA T. BUI,
CHAPTER 7 TRUSTEE
3550 Vine Street
Suite 210
Riverside, CA 92507

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

1    was none, creditors can expect to receive a significant distribution (as opposed to

2    nothing).    I represent to the Court that I will work with my professionals (and if

3    necessary, ask them to reduce administrative expenses) to ensure that creditors receive

4    a meaningful distribution.

5        12.    As is required by Federal Rule of Bankruptcy Procedure 6004(f) and Local

6    Bankruptcy Rule 6004-1(g), I will file a Report of Sale detailing the terms of the sale

7    shortly after the sale closes.

8        13.    For the reasons set forth in the Sale Motion and this Declaration, I

9    respectfully request that the Court grant the Sale Motion so that I do not lose this

10    favorable business opportunity to generate a substantial amount of funds for the Estate

11    from an asset that otherwise has no equity.

12

        I declare under penalty of perjury under the laws of the United States of America
13
    that the foregoing is true and correct.
14
        Executed on March 22, 2017, at Irvine, California.
15

16

17                /s/ Lynda T. Bui

18                Lynda T. Bui, solely in the capacity as the Chapter 7
                  Trustee for the bankruptcy estate of
                  *In re David K. Shono and Sheila L. Shono,*
19                Case No. 6:16-bk-14437-MJ

20

21

22

23

24

25

26

27

28

**LYNDA T. BUI,
CHAPTER 7 TRUSTEE**
3550 Vine Street
Suite 210
Riverside, CA 92507

11

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

# DECLARATION

## <u>DECLARATION OF MATT VANDERBEEK</u>

I, Matt Vanderbeek, declare and state as follows:

1.    The matters stated herein are true and correct and within my personal knowledge. If called as a witness, I could and would competently testify thereto.  I am a licensed California Real Estate Broker and am principal of Pro Realty Group located at 54 Endless Vista, Aliso Viejo, CA 92656; telephone 949-795-8914.

2.    I make this declaration in support of the *Chapter 7 Trustee's Motion for Order: (1) Authorizing the **Short Sale** of Real Property of the Estate Free and Clear of Liens Pursuant to Bankruptcy Code §§ 363(b) and 363(f); (2) Approving Payment of Real Estate Commission; and (3) Granting Related Relief Including Use of Sale Proceeds to Reimburse Trustee for Actual Costs Incurred* ("Sale Motion") filed by Lynda T. Bui, the Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of *In re David K. Shono and Sheila L. Shono*, Case No. 6:16-bk-14437-MJ ("Debtors").   All capitalized terms not otherwise defined herein shall have the meaning set forth in the Sale Motion.

3.    I have read the Sale Motion and am familiar with the real property located at 11412 Morning Star Lane, Moreno Valley, CA 92557 ("Property").

4.    As background, I would like to explain to the Court my understanding of the basic procedures that we go through to obtain the lender's short sale approval for any real property.  As a caveat, all lenders have their own procedures in addition to the basic requirements.  With respect to the basic requirement true for all short sales, we start with obtaining the listing from the bankruptcy trustee.  After a physical inspection of the property, we take pictures and put the property on the market.  To the extent that there are any showings requested, we accommodate that as well.  We coordinate with the debtor or the occupant of the property.  When we receive any offer, we send out a request for highest and best offer along with all the bankruptcy terms before submitting the highest and best to the bankruptcy trustee for review and execution.  Once we have an accepted offer, we present that offer with a package of all required documents

LYNDA T. BUI,
CHAPTER 7 TRUSTEE
3550 Vine Street
Suite 210
Riverside, CA 92507

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

1   (which are lender specific).  The package is often voluminous and lenders can change

2   requirements midstream and we would need to submit completed documents on their

3   forms.  Routinely, if there is anything missing or not properly completed, the lender will

4   not review the file or consider the short sale.  Assuming all documents are completed

5   and are properly submitted, the lender usually obtains an independent appraisal of the

6   property.  Depending on the lender, at this stage, the file is assigned a negotiator.

7        5.     The package for a short sale for any lender always includes a proposed

8   preliminary HUD-1 which details what funds will come in for the sale and the costs to be

9   paid as well as the payoff to the lender and the payment to the Estate.  The HUD-1 is

10  the basis for which every real estate sale transaction in the United States is founded on.

11  There is not a transaction in any 50 states that is completed without a HUD-1. The

12  buyer, seller and lender review and approve the HUD-1 before funds are dispersed

13  through escrow in the state of California. The HUD-1 is signed by all parties in

14  agreement to the payoff of each line item in the sale. The lienholder acknowledges that

15  their final approval of closing a property would be the approval of said HUD-1.  If for any

16  reason the lender does not approve a line item, it would not sign the HUD-1, and

17  escrow could not disburse funds or close the sale.

18       6.     Once the package is complete, the negotiator then reviews the entire

19  package, including the type and qualification of the proposed buyer and the proposed

20  HUD-1 and all the itemized proposed payments.  If the negotiator does not approve a

21  certain cost or payment, he or she will require that the items be deleted or otherwise

22  modified.  Using the proposed HUD-1, the negotiator will cause the written short sale

23  approval letter to be generated and sent to the bankruptcy trustee and/or the

24  borrower(s).  The short approval letter usually only provides for 30 days to close

25  escrow.  An extension is often difficult to obtain.  In addition, not closing escrow within

26  the 30 days can substantially delay closing because some lenders re-start the process,

27  others require new appraisals, and yet others will proceed with foreclosure.  It is not

28  uncommon to see the lender negotiate the short sale at the same time it proceeds with

LYNDA T. BUI,
CHAPTER 7 TRUSTEE
3550 Vine Street
Suite 210
Riverside, CA 92507

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

1   the foreclosure process such that upon expiration of the approval, the subject property

2   forecloses. For the above reasons and based on my years of experience, it is most

3   beneficial to obtain the Court order approving the short sale such that escrow can close

4   shortly after the lender approves the short sale.

5         I declare under penalty of perjury under the laws of the United States of America

6   that the foregoing is true and correct.

7         Executed on March 22, 2017, at Aliso Viejo, California.

8

9

10                            Matt Vanderbeek

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LYNDA T. BUI,
CHAPTER 7 TRUSTEE
3550 Vine Street
Suite 210
Riverside, CA 92507

14

Sale Mtn TC Shono 11412 Morning Star Lane, Moreno Valley, CA 92557 v1.docx
22295-000\50

# Exhibit 1
# Title Report



## PRELIMINARY REPORT

**Order No.:** 58601610638-JFA
**Property:** 11412 Morning Star Lane
Moreno Valley, CA 92557

*In response to the application for a policy of title insurance referenced herein, **Chicago Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(ies) of title insurance to be issued hereunder will be policy(ies) of Chicago Title Insurance Company, a Nebraska corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

### Chicago Title Insurance Company

By:

_____
President

Countersigned By:

Attest:

_____
Authorized Officer or Agent

_____
Secretary

## Exhibit 1

*Visit Us on our Website:  www.ctic.com*



**CHICAGO TITLE COMPANY**

***ISSUING OFFICE:*** 16969 Von Karman Ave Suite 150, Irvine, CA 92606

***FOR SETTLEMENT INQUIRIES, CONTACT:***
A&A Escrow Services
415 N. Crescent Dr., Suite 320 • Beverly Hills, CA 90210
(310)550-6055 • FAX (310)550-6130

## PRELIMINARY REPORT

**Update:  2**

| | |
|---|---|
| **Title Officer:**  John F Allen | **Escrow Officer:**  Antonia Delgado |
| **Email:**  AllenJo@ctt.com | **Email:**  antonia@aaescrow.com |
| **Phone No.:**  (949)263-6961 | **Phone No.:**  (310)550-6055 |
| **Fax No.:**  (949)263-0872 | **Fax No.:**  (310)550-6130 |
| **Title No.:** 58601610638-JFA | **Escrow No.:**  103953-AA |

**PROPERTY ADDRESS(ES):** 11412 Morning Star Lane, Moreno Valley, CA

**EFFECTIVE DATE:  January 24, 2017 at 07:30 AM**

The form of policy or policies of title insurance contemplated by this report is:

ALTA Homeowner's Policy of Title Insurance 2013

ALTA Loan Policy 2006

1. The estate or interest in the Land hereinafter described or referred to covered by this Report is:

    A FEE

2. Title to said estate or interest at the date hereof is vested in:

    **David K. Shono and Sheila L. Shono, husband and wife as community property, subject to Item No. 1**

3. The Land referred to in this Report is described as follows:

    SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

**Exhibit 1**

# EXHIBIT "A"
Legal Description

**For APN/Parcel ID(s):  475-121-016-9**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF MORENO VALLEY, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 32 OF TRACT NO. 9717, IN THE CITY OF MORENO VALLEY, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 107, PAGE(S) 88 TO 90, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY.

# Exhibit 1

**AT THE DATE HEREOF, EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2017-2018.

2.  Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

    | | |
    |---|---|
    | Tax Identification No.: | 475-121-016-9 |
    | Fiscal Year: | 2016-2017 |
    | 1st Installment: | $1,350.70 paid. |
    | 2nd Installment: | $1,350.70, Open |
    | Penalty and Cost: | $173.70 (Due after April 10) |
    | Homeowners Exemption: | $7,000.00 |
    | Code Area: | 021-173 |

3.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

4.  Water rights, claims or title to water, whether or not disclosed by the public records.

5.  Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

    | | |
    |---|---|
    | Recording Date: | October 23, 1979 |
    | Recording No: | 1979-224593, of Official Records. |

    Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or trust deed made in good faith and for value.



**Exhibit 1**

Title No.:  58601610638-JFA
Update:  2

## EXCEPTIONS
(continued)

6.    This transaction has been identified as a "Short Sale" with pending negotiations on the below referenced Deed of Trust(s) and/or judgments or liens. To avoid any delays in closing, Chicago Title Company will require the following items for review and verification prior to the closing of said transaction and reserves the right to require additional information to clarify requirement should the need arise.

a) A valid and current demand(s) signed by Lender and acknowledged by Borrower with any amendments thereto. Should the due date of the funds be the same date as closing, the Company will require an extension from the short sale lender to confirm funds will be accepted should they be received the following day.

b) A copy of the negotiated Short Sale Approval Letter. The Company will also require written approval from the short sale lender should there be any changes from the pre-approved HUD and the final HUD prior to closing. This includes approvals for any additional funds brought to closing by Brokers or Buyers not listed on the original approval.
c) Should the aforementioned Short Sale Approval Letter contain any conditional language regarding the future transfer of said property, the Company reserves the right to request its elimination and/or modification.
d) A certified final HUD to accompany closing documentation for the short sale lender. Funds will not be disbursed until the final HUD has been submitted for review and approved by the Company's payoff department.

7.    Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

Granted to:            General Telephone Company of California, a Corporation
Purpose:              The construction and maintenance of underground conduits, manholes, pedestals, cables, wires and appurtenances, within 3.00 feet of all side lot lines (except such lines as coincide with boundary lines of streets and alleys), of said tract
Recording Date:        October 2, 1980
Recording No.:         1980-181118, of Official Records.
Affects:               Said land

8.    Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

Granted to:            Southern California Edison Company, a Corporation
Purpose:              Underground electrical supply systems and communication systems
Recording Date:        October 6, 1980
Recording No.:         1980-183336, of Official Records.
Affects:               Within 6.00 feet of all front lot lines, also within 4.00 feet of all side lot lines

9.    A homestead declaration

Executed by:           David K. Shono and Sheila L. Shono
Dated:                January 3, 2003
Recording Date:        January 6, 2003
Recording No.:         2003-0006245, of Official Records.

---



**Exhibit 1**

Title No.: 58601610638-JFA
Update: 2

## EXCEPTIONS
(continued)

**10.**     A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $312,000.00 |
| Dated: | February 17, 2006 |
| Trustor/Grantor: | David K Shono and Sheila L Shono, husband and wife |
| Trustee: | Golden West Savings Association Service Co., a California Corporation |
| Beneficiary: | World Savings Bank, FSB, a Federal Savings Bank |
| Loan No: | 0042206714 |
| Recording Date: | February 27, 2006 |
| Recording No.: | 2006-0139430, of Official Records. |

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

| | |
|---|---|
| Trustee: | Quality Loan Service Corporation |
| Recording Date: | April 21, 2016 |
| Recording No: | 2016-0157514, of Official Records. |

A Notice of Default under the terms of said deed of trust

| | |
|---|---|
| Executed by: | Quality Loan Service Corporation |
| Recording Date: | April 27, 2016 |
| Recording No: | 2016-0166046, of Official Records. |

**11.**     A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $245,000.00 |
| Dated: | April 29, 2005 |
| Trustor/Grantor: | David K. Shono ND Sheila L. Shono, husband and wife, as community property |
| Trustee: | Fidelity National Title Insurance Company, a California Corporation |
| Beneficiary: | Mortgage Electronic Registration Systems, Inc. (MERS), solely as nominee for Encore Credit Corp., a California Corporation |
| Loan No.: | 216192 |
| Recording Date: | May 6, 2005 |
| Recording No.: | 2005-1070248, of Official Records. |

| | |
|---|---|
| and Re-Recording Date: | May 4, 2006 |
| and Re-Recording No.: | 2006-325782, of Official Records. |
| Reason: | Re-Recorded to correct County |



**Exhibit 1**

Title No.:  58601610638-JFA
Update:  2

**EXCEPTIONS**
(continued)

**12.**     In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

Party(s):                  All Parties

The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

NOTE: The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

**END OF EXCEPTIONS**



Printed:  02.01.17 @ 02:09 PM
CA-CT-FWKO-02180.055860-SPS-1-17-58601610638

**NOTES**

**Note 1.**  Note: There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

**Note 2.**  NOTE: When this title order closes and if the Company is handling the loan proceeds through a sub-escrow, all title charges and expenses normally billed will be deducted from those loan proceeds. Title charges and expenses would include Title Premiums, any Tax or Bond advances, Documentary Transfer Tax, Recording Fees, etc.

**Note 3.**  Note: None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an Extended Coverage Loan Policy, when issued.

**Note 4.**  Note: The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land a Single Family Residence, known as 11412 Morning Star Lane, City of Moreno Valley, State of California, to an Extended Coverage Loan Policy.

**Note 5.**  NOTE: The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for asample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

**Note 6.**  If a county recorder, title insurance company, escrow company, real estate agent or association provides a copy of the declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions.  Said statement is to be in at least 14-point bold faced typed and may be stamped on the first page of any document provided or included as a cover page attached to the requested document.  Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

**Note 7.**  Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using Bancserv or other approved third-party service. If the above requirements cannot be met, please call the company at the number provided in this report.

**END OF NOTES**



**FIDELITY NATIONAL FINANCIAL, INC.**
**PRIVACY NOTICE**
**Effective: April 1, 2016**

**Order No.:** 58601610638-PR

At Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF", "our" or "we"), we value the privacy of our customers. This Privacy Notice explains how we collect, use, and protect your information and explains the choices you have regarding that information. A summary of our privacy practices is below. We also encourage you to read the complete Privacy Notice following the summary.

| | |
|---|---|
| **Types of Information Collected.** You may provide us with certain personal information, like your contact information, social security number (SSN), driver's license, other government ID numbers, and/or financial information. We may also receive information from your Internet browser, computer and/or mobile device. | **How Information is Collected.** We may collect personal information directly from you from applications, forms, or communications we receive from you, or from other sources on your behalf, in connection with our provision of products or services to you. We may also collect browsing information from your Internet browser, computer, mobile device or similar equipment. This browsing information is generic and reveals nothing personal about the user. |
| **Use of Your Information.** We may use your information to provide products and services to you (or someone on your behalf), to improve our products and services, and to communicate with you about our products and services. We do not give or sell your personal information to parties outside of FNF for their use to market their products or services to you. | **Security Of Your Information.** We utilize a combination of security technologies, procedures and safeguards to help protect your information from unauthorized access, use and/or disclosure. We communicate to our employees about the need to protect personal information. |
| **Choices With Your Information.** Your decision to submit personal information is entirely up to you. You can opt-out of certain disclosures or use of your information or choose to not provide any personal information to us. | **When We Share Information.** We may disclose your information to third parties providing you products and services on our behalf, law enforcement agencies or governmental authorities, as required by law, and to parties with whom you authorize us to share your information. |
| **Information From Children.** We do not knowingly collect information from children under the age of thirteen (13), and our websites are not intended to attract children. | **Privacy Outside the Website.** We are not responsible for the privacy practices of third parties, even if our website links to those parties' websites. |
| **Access and Correction.** If you desire to see the information collected about you and/or correct any inaccuracies, please contact us in the manner specified in this Privacy Notice. | **Do Not Track Disclosures.** We do not recognize "do not track" requests from Internet browsers and similar devices. |
| **The California Online Privacy Protection Act.** Certain FNF websites collect information on behalf of mortgage loan servicers. The mortgage loan servicer is responsible for taking action or making changes to any consumer information submitted through those websites. | **International Use.** By providing us with your information, you consent to the transfer, processing and storage of such information outside your country of residence, as well as the fact that we will handle such information consistent with this Privacy Notice. |
| **Your Consent To This Privacy Notice.** By submitting information to us and using our websites, you are accepting and agreeing to the terms of this Privacy Notice. | **Contact FNF.** If you have questions or wish to contact us regarding this Privacy Notice, please use the contact information provided at the end of this Privacy Notice. |

# Exhibit 1

# FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

FNF respects and is committed to protecting your privacy. We pledge to take reasonable steps to protect your Personal Information (as defined herein) and to ensure your information is used in compliance with this Privacy Notice.

This Privacy Notice is only in effect for information collected and/or owned by or on behalf of FNF, including collection through any FNF website or online services offered by FNF (collectively, the "Website"), as well as any information collected offline (e.g., paper documents). The provision of this Privacy Notice to you does not create any express or implied relationship, nor create any express or implied duty or other obligation, between FNF and you.

**Types of Information Collected**
We may collect two (2) types of information: Personal Information and Browsing Information.

Personal Information. The types of personal information FNF collects may include, but are not limited to:

- contact information (*e.g.*, name, address, phone number, email address);
- social security number (SSN), driver's license, and other government ID numbers; and
- financial account or loan information.

Browsing Information. The types of browsing information FNF collects may include, but are not limited to:

- Internet Protocol (or IP) address or device ID/UDID, protocol and sequence information;
- browser language;
- browser type;
- domain name system requests;
- browsing history;
- number of clicks;
- hypertext transfer protocol headers; and
- application client and server banners.

**How Information is Collected**
In the course of our business, we may collect *Personal Information* about you from the following sources:

- applications or other forms we receive from you or your authorized representative, whether electronic or paper;
- communications to us from you or others;
- information about your transactions with, or services performed by, us, our affiliates or others; and
- information from consumer or other reporting agencies and public records that we either obtain directly from those entities, or from our affiliates or others.

We may collect *Browsing Information* from you as follows:

- Browser Log Files. Our servers automatically log, collect and record certain Browsing Information about each visitor to the Website. The Browsing Information includes only generic information and reveals nothing personal about the user.

- Cookies. From time to time, FNF may send a "cookie" to your computer when you visit the Website. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. When you visit the Website again, the cookie allows the Website to recognize your computer, with the goal of providing an optimized user experience. Cookies may store user preferences and other information. You can choose not to accept cookies by changing the settings of your Internet browser. If you choose not to accept cookies, then some functions of the Website may not work as intended.

**Use of Collected Information**
Information collected by FNF is used for three (3) main purposes:

- To provide products and services to you, or to one or more third party service providers who are performing services on your behalf or in connection with a transaction involving you;

- To improve our products and services; and

- To communicate with you and to inform you about FNF's products and services.

**When We Share Information**
We may share your Personal Information (excluding information we receive from consumer or other credit reporting agencies) and Browsing Information with certain individuals and companies, as permitted by law, without first obtaining your authorization. Such disclosures may include, without limitation, the following:

- to agents, representatives, or others to provide you with services or products you have requested, and to enable us to detect or prevent criminal activity, fraud, or material misrepresentation or nondisclosure;

- to third-party contractors or service providers who provide services or perform other functions on our behalf;

- to law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoenas or court orders; and/or

- to other parties authorized to receive the information in connection with services provided to you or a transaction involving you.

# Exhibit 1

We may disclose Personal Information and/or Browsing Information when required by law or in the good-faith belief that such disclosure is necessary to:

- comply with a legal process or applicable laws;
- enforce this Privacy Notice;
- investigate or respond to claims that any information provided by you violates the rights of a third party; or
- protect the rights, property or personal safety of FNF, its users or the public.

We make efforts to ensure third party contractors and service providers who provide services or perform functions on our behalf protect your information. We limit use of your information to the purposes for which the information was provided. We do not give or sell your information to third parties for their own direct marketing use.

We reserve the right to transfer your Personal Information, Browsing Information, as well as any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of our bankruptcy, reorganization, insolvency, receivership or an assignment for the benefit of creditors. You expressly agree and consent to the use and/or transfer of this information in connection with any of the above described proceedings. We cannot and will not be responsible for any breach of security by any third party or for any actions of any third party that receives any of the information that is disclosed to us.

### Choices With Your Information

Whether you submit your information to FNF is entirely up to you. If you decide not to submit your information, FNF may not be able to provide certain products or services to you. You may choose to prevent FNF from using your information under certain circumstances ("opt out"). You may opt out of receiving communications from us about our products and/or services.

### Security And Retention Of Information

FNF is committed to protecting the information you share with us and utilizes a combination of security technologies, procedures and safeguards to help protect it from unauthorized access, use and/or disclosure. FNF trains its employees on privacy practices and on FNF's privacy and information security policies. FNF works hard to retain information related to you only as long as reasonably necessary for business and/or legal purposes.

### Information From Children

The Website is meant for adults. The Website is not intended or designed to attract children under the age of thirteen (13). We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

### Access and Correction

To access your Personal Information in the possession of FNF and correct inaccuracies, please contact us by email at privacy@fnf.com or by mail at:

    Fidelity National Financial, Inc.
    601 Riverside Avenue
    Jacksonville, Florida  32204
    Attn:  Chief Privacy Officer

### Your Consent To This Privacy Notice

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of information by FNF in compliance with this Privacy Notice. We reserve the right to make changes to this Privacy Notice. If we change this Privacy Notice, we will post the revised version on the Website.

### Privacy Outside the Website

The Website may contain links to other websites, including links to websites of third party service providers. FNF is not and cannot be responsible for the privacy practices or the content of any of those other websites.

### International Users

Because FNF's headquarters is located in the United States, we may transfer your Personal Information and/or Browsing Information to the United States. By using our website and providing us with your Personal Information and/or Browsing Information, you understand and consent to the transfer, processing and storage of such information outside your country of residence, as well as the fact that we will handle such information consistent with this Privacy Notice.

### Do Not Track Disclosures

Currently, our policy is that we do not recognize "do not track" requests from Internet browsers and similar devices.

### The California Online Privacy Protection Act

For some websites which FNF or one of its companies owns, such as the Customer CareNet ("CCN"), FNF is acting as a third party service provider to a mortgage loan servicer. In those instances, we may collect certain information on behalf of that mortgage loan servicer, including:

- first and last name;
- property address;
- user name and password;
- loan number;
- social security number - masked upon entry;
- email address;
- security questions and answers; and
- IP address.

The information you submit is then transferred to your mortgage loan servicer by way of CCN. **The mortgage loan servicer is responsible for taking action or making changes to any consumer information submitted through this website. For example, if you believe that your payment or user information is incorrect, you must contact your mortgage loan servicer.**

CCN does not share consumer information with third parties, other than those with which the mortgage loan servicer has contracted to interface with the CCN application. All sections of this Privacy Notice apply to your interaction with CCN, except for the sections titled Choices with Your Information, and Access and Correction. If you have questions regarding the choices you have with regard to your personal information or how to access or correct your personal information, contact your mortgage loan servicer.

### Contact FNF

Please send questions and/or comments related to this Privacy Notice by email at privacy@fnf.com or by mail at:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida  32204
Attn:  Chief Privacy Officer


Copyright © 2016. Fidelity National Financial, Inc.
All Rights Reserved.

EFFECTIVE AS OF APRIL 1, 2016

# Exhibit 1

## ATTACHMENT ONE

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY - 1990

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy; or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6. Any lien or right to a lien for services, labor or material not shown by the public records.

# Exhibit 1

## ATTACHMENT ONE
### (CONTINUED)

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

## EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake or subsidence.
9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

• For Covered Risk 16, 18, 19 and 21, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A<br>or<br>$2,500.00<br>(whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A<br>or<br>$5,000.00<br>(whichever is less) | $ 25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A<br>or<br>$5,000.00<br>(whichever is less) | $ 25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A<br>or<br>$2,500.00<br>(whichever is less) | $  5,000.00 |

# Exhibit 1

## ATTACHMENT ONE
### (CONTINUED)

### 2006 ALTA LOAN POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   (i)   the occupancy, use, or enjoyment of the Land;

   (ii)  the character, dimensions, or location of any improvement erected on the Land;

   (iii) the subdivision of land; or

   (iv)  environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

   (a) created, suffered, assumed, or agreed to by the Insured Claimant;

   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

   (c) resulting in no loss or damage to the Insured Claimant;

   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

   (a) a fraudulent conveyance or fraudulent transfer, or

   (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

[Except as provided in Schedule B - Part II,[ t[or T]his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

### [PART I

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor or material not shown by the Public Records.]

### PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:]

# Exhibit 1

## ATTACHMENT ONE
### (CONTINUED)

### 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

   (i)  the occupancy, use, or enjoyment of the Land;

   (ii)  the character, dimensions, or location of any improvement erected on the Land;

   (iii)  the subdivision of land; or

   (iv)  environmental protection;

   or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

   (b)  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

   (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

   (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

   (c)  resulting in no loss or damage to the Insured Claimant;

   (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

   (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

   (a)  a fraudulent conveyance or fraudulent transfer; or

   (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

[The above policy form may be issued to afford either Standard Coverage or Extended Coverage.  In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor or material not shown by the Public Records.]

7. [Variable exceptions such as taxes, easements, CC&R's, etc., shown here.]

# Exhibit 1

**ATTACHMENT ONE**
**(CONTINUED)**

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY - ASSESSMENTS PRIORITY (04-02-15)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i)  the occupancy, use, or enjoyment of the Land;

    (ii)  the character, dimensions, or location of any improvement erected on the Land;

    (iii)  the subdivision of land; or

    (iv)  environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

    (b)  Any governmental police power.  This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

2.  Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law.  This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy.  This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy.  This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes.  This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a)  a fraudulent conveyance or fraudulent transfer, or

    (b)  a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

# Exhibit 1

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

| **FNF Underwritten Title Companies** | **Underwritten by FNF Underwriters** |
|---|---|
| CTC - Chicago Title Company | CTIC - Chicago Title Insurance Company |

## Available Discounts

**CREDIT FOR PRELIMINARY TITLE REPORTS AND/OR COMMITMENTS ON SUBSEQUENT POLICIES (CTIC)**
Where no major change in the title has occurred since the issuance of the original report or commitment, the order may be reopened within 12 to 36 months and all or a portion of the charge previously paid for the report or commitment may be credited on a subsequent policy charge.

**FEE REDUCTION SETTLEMENT PROGRAM (CTC, CTIC)**
Eligible customers shall receive a $20.00 reduction in their title and/or escrow fees charged by the Company for each eligible transaction in accordance with the terms of the Final Judgments entered in *The People of the State of California et al. v. Fidelity National Title Insurance Company et al.,* Sacramento Superior Court Case No. 99AS02793, and related cases.

**DISASTER LOANS (CTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be 50% to 70% of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be 32% to 50% of the appropriate title insurance rate, depending on the type of coverage selected.

## Exhibit 1



# Exhibit 1

This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

# Exhibit 2
# Schedules A/B, C and D

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | David K Shono |
| | First Name    Middle Name    Last Name |
| Debtor 2 | Sheila L Shono |
| (Spouse, if filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number | |

☐ Check if this is an
amended filing

## Official Form 106A/B
## Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

☑ Yes. Where is the property?

| | | |
|---|---|---|
| **1.1** | | |
| 11412 Morning star Lane | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
| Street address, if available, or other description | ☑ Single-family home | |
| | ☐ Duplex or multi-unit building | |
| | ☐ Condominium or cooperative | |
| Moreno Valley    CA    92557-0000 | ☐ Manufactured or mobile home | **Current value of the entire property?**    **Current value of the portion you own?** |
| City    State    ZIP Code | ☐ Land | $270,000.00    $270,000.00 |
| | ☐ Investment property | |
| | ☐ Timeshare | **Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** |
| | ☐ Other | |
| | **Who has an interest in the property?** Check one | |
| Riverside | ☐ Debtor 1 only | |
| County | ☐ Debtor 2 only | |
| | ☑ Debtor 1 and Debtor 2 only | ☑ **Check if this is community property** |
| | ☐ At least one of the debtors and another | (see instructions) |
| | **Other information you wish to add about this item, such as local property identification number:** | |
| | 11412 Morning Star Lane Moreno Valley, CA 92557 | |

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here**............................................................=>

$270,000.00

**Part 2:** Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

## Exhibit 2

Debtor 1    David K Shono
Debtor 2    Sheila L Shono

Case number *(if known)*

### 3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No

☑ Yes

| 3.1 | Make: | **Kawasaki** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|

Model:    **KZ-1000**

Year:    **1996**

Approximate mileage:    50000

Other information:

Who has an interest in the property? Check one

☐ Debtor 1 only

☐ Debtor 2 only

☑ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☑ **Check if this is community property**
(see instructions)

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $1,200.00 | $1,200.00 |

### 4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☑ No

☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..............................................................=>

$1,200.00

| Part 3: | Describe Your Personal and Household Items |
|---|---|

Do you own or have any legal or equitable interest in any of the following items?

Current value of the portion you own?
Do not deduct secured claims or exemptions.

### 6. Household goods and furnishings
*Examples:* Major appliances, furniture, linens, china, kitchenware

☐ No

☑ Yes.  Describe.....

| Household Goods and Furniture | $700.00 |
|---|---|

### 7. Electronics
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games

☐ No

☑ Yes.  Describe.....

| Various electronics | $600.00 |
|---|---|

### 8. Collectibles of value
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles

☑ No

☐ Yes.  Describe.....

### 9. Equipment for sports and hobbies
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☑ No

☐ Yes.  Describe.....

# Exhibit 2

Debtor 1    David K Shono
Debtor 2    Sheila L Shono                                                Case number *(if known)*

**10. Firearms**
  *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
  ■ No
  ☐ Yes. Describe.....

**11. Clothes**
  *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
  ☐ No
  ■ Yes. Describe.....

| Clothing Items | $1,000.00 |
|---|---|

**12. Jewelry**
  *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
  ☐ No
  ■ Yes. Describe.....

| Various Jewelry and Wedding Rings | $3,100.00 |
|---|---|

**13. Non-farm animals**
  *Examples:* Dogs, cats, birds, horses
  ■ No
  ☐ Yes. Describe.....

**14. Any other personal and household items you did not already list, including any health aids you did not list**
  ■ No
  ☐ Yes. Give specific information.....

**15.** Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached
  for Part 3. Write that number here ............................................................

| $5,400.00 |
|---|

**Part 4:    Describe Your Financial Assets**

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**16. Cash**
  *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
  ☐ No
  ■ Yes.................................................................................................

|  | Cash | $200.00 |
|---|---|---|

**17. Deposits of money**
  *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar
           institutions. If you have multiple accounts with the same institution, list each.
  ☐ No
  ■ Yes........................                Institution name:

| 17.1. | Banking Accounts | $391.00 |
|---|---|---|

**18. Bonds, mutual funds, or publicly traded stocks**
  *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
  ■ No
  ☐ Yes.................                Institution or issuer name:

# Exhibit 2

Case 6:16-bk-14437-MJ    Doc 31    Filed 03/29/16    Entered 03/29/16 16:13:13    Desc
Main Document    Page 14 of 80

| Debtor 1 | David K Shono | |
|---|---|---|
| Debtor 2 | Sheila L Shono | |
| | | Case number *(if known)* |

**19.  Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

■ No
☐ Yes.  Give specific information about them...................

Name of entity:                                             % of ownership:

**20.  Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No
☐ Yes. Give specific information about them

Issuer name:

**21.  Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No
☐ Yes. List each account separately.

Type of account:                         Institution name:

**22.  Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes.  ....................

Institution name or individual:

**23.  Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes.............

Issuer name and description.

**24.  Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No
☐ Yes.............

Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25.  Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No
☐ Yes.  Give specific information about them...

**26.  Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No
☐ Yes.  Give specific information about them...

**27.  Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No
☐ Yes.  Give specific information about them...

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

**28.  Tax refunds owed to you**

☐ No
■ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

| Tax Refund | $0.00 |
|---|---|

| Official Form 106A/B | Schedule A/B: Property | page 4 |
|---|---|---|

# Exhibit 2

Debtor 1    David K Shono
Debtor 2    Sheila L Shono                                                   Case number *(if known)*

**29. Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
   ■ No
   ☐ Yes. Give specific information......

**30. Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
   benefits; unpaid loans you made to someone else
   ■ No
   ☐ Yes.  Give specific information..

**31. Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
   ■ No
   ☐ Yes. Name the insurance company of each policy and list its value.
   Company name:                                Beneficiary:                        Surrender or refund
                                                                                    value:

**32. Any interest in property that is due from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
   someone has died.
   ■ No
   ☐ Yes.  Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
   ■ No
   ☐ Yes.  Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
   ■ No
   ☐ Yes.  Describe each claim.........

**35. Any financial assets you did not already list**
   ■ No
   ☐ Yes.  Give specific information..

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
   for Part 4. Write that number here..................................................................................................................    | $591.00 |

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |

**37. Do you own or have any legal or equitable interest in any business-related property?**
   ■ No. Go to Part 6.
   ☐ Yes.  Go to line 38.

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1. |

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
   ■ No. Go to Part 7.
   ☐ Yes.  Go to line 47.

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |

**Exhibit 2**

Debtor 1    David K Shono

Debtor 2    Sheila L Shono

Case number *(if known)*

53. **Do you have other property of any kind you did not already list?**
   *Examples:* Season tickets, country club membership
   ■ No
   ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** ...................................

| | $0.00 |

| **Part 8:** | List the Totals of Each Part of this Form |

| 55. | **Part 1: Total real estate, line 2** ...................................................................................... | | $270,000.00 |
|---|---|---|---|
| 56. | **Part 2: Total vehicles, line 5** | $1,200.00 | |
| 57. | **Part 3: Total personal and household items, line 15** | $5,400.00 | |
| 58. | **Part 4: Total financial assets, line 36** | $591.00 | |
| 59. | **Part 5: Total business-related property, line 45** | $0.00 | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| 61. | **Part 7: Total other property not listed, line 54** | + $0.00 | |

62. **Total personal property.** Add lines 56 through 61...    $7,191.00    Copy personal property total ▶    $7,191.00

63. **Total of all property on Schedule A/B.** Add line 55 + line 62

| | $277,191.00 |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

# Exhibit 2

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | David K Shono |
| | First Name   Middle Name   Last Name |
| Debtor 2 | Sheila L Shono |
| (Spouse if, filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | _____ |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt                    4/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

### Part 1:   Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☑ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| 11412 Morning star Lane Moreno Valley, CA 92557  Riverside County<br>11412 Morning Star Lane<br>Moreno Valley, CA 92557<br>Line from *Schedule A/B*: 1.1 | $270,000.00 | ☑ $3,233.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(1) |
| 1996 Kawasaki KZ-1000 50000 miles<br>Line from *Schedule A/B*: 3.1 | $1,200.00 | ☑ $1,200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(2) |
| Household Goods and Furniture<br>Line from *Schedule A/B*: 6.1 | $700.00 | ☑ $300.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(3) |
| Various electronics<br>Line from *Schedule A/B*: 7.1 | $600.00 | ☑ $600.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(3) |
| Clothing Items<br>Line from *Schedule A/B*: 11.1 | $1,000.00 | ☑ $1,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(3) |

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**Exhibit 2**

| Debtor 1 | David K Shono | |
|---|---|---|
| Debtor 2 | Sheila L Shono | Case number (if known) |

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| Various Jewelry and Wedding Rings<br>Line from *Schedule A/B*: 12.1 | $3,100.00 | ■ $1,600.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(4) |
| Cash<br>Line from *Schedule A/B*: 16.1 | $200.00 | ■ $200.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |
| Banking Accounts<br>Line from *Schedule A/B*: 17.1 | $391.00 | ■ $391.00<br>☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |

3. **Are you claiming a homestead exemption of more than $160,375?**
   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

   ■ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       ☐ No

       ☐ Yes

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

# Exhibit 2

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | David K Shono | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | Sheila L Shono | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an amended filing

Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1: List All Secured Claims**

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim | Column C Unsecured portion If any |
|---|---|---|---|

**2.1 American Honda Finance**
Creditor's Name

6261 Katella Ave Ste 1a
Cypress, CA 90630
Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
■ Check if this claim relates to a community debt

Date debt was incurred    Opened 2/27/11 Last Active 7/02/13

**Describe the property that secures the claim:**
Auto Lease

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset) _____

Column A: $4,578.00
Column B: Unknown
Column C: Unknown

Last 4 digits of account number    8560

**2.2 Chase**
Creditor's Name

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Describe the property that secures the claim:**
Mortgage

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit

Column A: Unknown
Column B: Unknown
Column C: $0.00

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

## Exhibit 2

| Debtor 1 | David K Shono | | | Case number (if know) | |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | Sheila L Shono | | | | |
| | First Name | Middle Name | Last Name | | |

■ **Check if this claim relates to a community debt**   ☐ Other (including a right to offset) _____

| | Opened 11/01/05 Last Active | | | | |
|---|---|---|---|---|---|
| Date debt was incurred | 1/01/06 | Last 4 digits of account number | 6871 | | |

| 2.3 | Wfhm | **Describe the property that secures the claim:** | $266,767.00 | $270,000.00 | $0.00 |
|---|---|---|---|---|---|

Creditor's Name

11412 Morning star Lane Moreno
Valley, CA 92557  Riverside County
11412 Morning Star Lane
Moreno Valley, CA 92557

4101 Wiseman Blvd #
Mc-T
San Antonio, TX 78251

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)

☐ Judgment lien from a lawsuit

■ Other (including a right to offset) _____

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

■ **Check if this claim relates to a community debt**

| | Opened 2/27/06  Last Active | | | | |
|---|---|---|---|---|---|
| Date debt was incurred | 10/08/12 | Last 4 digits of account number | 6714 | | |

| Add the dollar value of your entries in Column A on this page. Write that number here: | $271,345.00 |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $271,345.00 |

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

# Exhibit 2

# Exhibit 3
# Letter Signed by Debtors
# Consenting to the Short Sale

3550 Vine Street,              Telephone (949) 340-3400
Suite 210                      Facsimile (949) 340-3000
Riverside, CA 92507            Email: Trustee.Bui@shbllp.com

**Lynda T. Bui, Chapter 7 Trustee**

March 22, 2017

David K. Shono
Sheila L. Shono
11412 Morning Star Ln.
Moreno Valley, CA 92557

Re:    In re David K. Shono and Sheila L. Shono
       Case No.:  6:16-bk-14437-MJ
       Letter Agreement for short sale of
       11412 Morning Star Lane, Moreno Valley

Dear Mr. and Ms. Shono:

As the result of your bankruptcy filing, the real property you listed in your bankruptcy schedules is now asset of your bankruptcy estate ("Estate").  As the Trustee, I am required by law to sell non-exempt assets of the Estate which in order to pay your creditors.  This letter is to confirm our understandings regarding the short sale of the property located at 11412 Morning Star Lane, Moreno Valley, CA 92557 ("Property") and memorialize an agreement prior to the Estate undertaking of the short sale of the Property.

As you know, the liens that encumber the Property it exceed its value, meaning that there is no equity.  It is my understanding you want to proceed with the short sale so that you do not have a foreclosure on your record, making it easier for you to purchase another home later in your life.

Based on the above understandings, the Estate will proceed with the short sale of the Property and you will agree to the below:

- On your *Statement of Intention* filed with the Bankruptcy Court on May 17, 2016, you did not indicate what you would do with the Property (i.e., either surrender or retain the Property).  Nevertheless, you agree that you will surrender the Property.  However, you do not have to vacate the Property until the close of escrow as discussed below.

- You agreed that as the Trustee for your Estate, I would market the Property for a short sale.  The short sale is expressly conditioned on

## Exhibit 3

Mr. and Ms. Shono
March 22, 2017
Page 2

approval of the Bankruptcy Court and approval of the lender on the Property.

- You agree to cooperate with my efforts in the short sale process, including providing information as necessary and cooperate with my Broker Team (including Matt Vanderbeek of Pro Realty Group, who has already contacted you regarding the short sale). Mr. Vanderbeek is my authorized Trustee agent; therefore, you will need to provide him and his representatives access to the Property. I have been assured by Mr. Vanderbeek that all of his representatives will be cordial and understanding of your current situation. Please cooperate with Mr. Vanderbeek and any of his agents/representatives who might be contacting you.

- I will file a Motion with the Bankruptcy Court to request approval of the short sale that provides payment of all expenses associated with the short sale, including (i) payment of a standard real estate brokerage commission to my realtor and reimbursement of the realtor's out-of-pocket expenses, <u>and</u> (ii) a Trustee release fee for the Estate in an amount approved by me, to be paid by the buyer at the close of escrow to provide for meaningful distribution on allowed unsecured claims. Thus, the Property will not be sold unless the Estate receives funds to pay creditors. It is my understanding from the lender short sale approval letter I received, the lender has agreed to a HAFA relocation assistance payment of $10,000.00, to be paid to you at the close of escrow. The Estate will waive any claim in the $10,000.00 relocation fee for your benefit.

- Once the lender approved short sale of the Property is approved by the Bankruptcy Court, you will need to vacate the Property so that it may be turned over to the buyer. The hearing on Motion for approval of the short sale will be on April 18, 2017 at 10:00 a.m. Based on this, I anticipate you will need to move by April 23, 2017.

- You agree that any Trustee release fees paid to the Estate through my short sale of the Property shall be used for payment of administrative claims of the Estate and allowed unsecured claims against the Estate.

- As the Property is encumbered by liens that exceed its value and there is no equity, you agree that (i) your $3,233 exemption claim in the Property under C.C.P §703.140(b)(1) is waived, and (ii) you will not be entitled to claim an exemption in the funds generated from the sale of the Property, including the Trustee release fee.

# Exhibit 3

Mr. and Ms. Shono
March 22, 2017
Page 3

- I have listed the Property for sale in my capacity as the Chapter 7 Trustee for your Estate, and not in my personal capacity, and no liability or obligations shall accrue to me personally as a result of such listing.

- As the Trustee, I reserve the right, in my sole discretion, to determine not to sell the Property if doing so does not benefit the Estate.

Based on the foregoing, by signing below, I accept and agree to proceed with the administering the Property through a short sale that is expressly conditioned on approval of the Bankruptcy Court and approval of the lender on the Property.

ACCEPTED AND AGREED

_____
David K. Shono

_____
Sheila L. Shono

Very truly yours,

*Lynda T. Bui*
[electronic signature]

Lynda T. Bui
Chapter 7 Trustee

LTB/
cc:  **Scott W Hanssler, Esq. (via email at swh@hansslerlaw.com)**
     **Matt Vanderbeek (via email at mattvanderbeek@gmail.com)**

Letter Agreement for Short Sell TC Shono.docx

# Exhibit 3

# Exhibit 4
# Short Sale Contract

CALIFORNIA
ASSOCIATION
OF REALTORS®

## CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
### TABLE OF ATTACHED FORMS
(04/15)

## Attached Forms

The RPA-CA includes the following forms in the following order:

- Disclosure Regarding Real Estate Agency (2 pages)
  (C.A.R. Form AD-2)........................................... (starting on second page)

- Possible Representation - Buyer/Seller (1 page)
  (C.A.R. Form PRBS)............................................ (starting on fourth page)

- Table of Contents - Residential Purchase Agreement
  (C.A.R. Form TOC-RPA)........................................(starting on fifth page)

- Residential Purchase Agreement (10 pages)
  (C.A.R. Form RPA-CA).......................................... (starting on sixth page)

- Buyer Inspection Advisory (1 page)
  (C.A.R. Form BIA)........................................... (starting on sixteenth page)

© 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

11/14 (PAGE 1 OF 1)

### TABLE OF ATTACHED FORMS

Mohammad Azadzoi 16832 VALLEY SPRING DR RIVERSIDER, CA 92503    Phone: (949)8120484    Fax:    Untitled
JOHN AZADZOI    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

# Exhibit 4



**CALIFORNIA ASSOCIATION OF REALTORS®**

### DISCLOSURE REGARDING
### REAL ESTATE AGENCY RELATIONSHIP
(Selling Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a)Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)A duty of honest and fair dealing and good faith.
    (c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a)Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)A duty of honest and fair dealing and good faith.
    (c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a)A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b)Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date 09/20/2016
                                       ZARMINA AZADZOY

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date

Agent _____ **ELITE REO BROKERS** _____ BRE Lic. # **01786757**
             Real Estate Broker (Firm)
By _____ BRE Lic. # **01786757** _____ Date **09/20/2016**
   (Salesperson or Broker-Associate) **MOHAMMAD AZADZOI**

Agency Disclosure Compliance (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

_____ 9-30-16 _____ _____ _____
Seller/Landlord       Date                  Seller/Landlord         Date

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by _____ Date _____



EQUAL HOUSING OPPORTUNITY

**AD REVISED 12/14 (PAGE 1 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Mohammad Azadzoi 16832 VALLEY SPRING DR RIVERSIDER, CA 92503           Phone: (949)8120484     Fax:             Untitled
JOHN AZADZOI           Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

# Exhibit 4

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. **(b)** "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. **(c)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. **(d)** "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. **(e)** "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. **(f)** "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. **(g)** "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(h)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. **(i)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(j)** "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(k)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(l)** "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. **(m)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(n)** "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. **(o)** "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. **(p)** "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: **(a)** The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). **(c)** Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. **(d)** The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17 (a)** As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.
**(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form.

| | |
|---|---|
| (DO NOT COMPLETE. SAMPLE ONLY) | is the agent of (check one): □ the seller exclusively; or □ both the buyer and seller. |
| (Name of Listing Agent) | |
| (DO NOT COMPLETE. SAMPLE ONLY) | is the agent of (check one): □ the buyer exclusively; or □ the seller exclusively; or |
| (Name of Selling Agent if not the same as the Listing Agent) | □ both the buyer and seller. |

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| | |
|---|---|
| Reviewed by | Date |



**AD REVISED 12/14 (PAGE 2 OF 2)**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                Untitled

# Exhibit 4



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER
## OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: **(a)** Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; **(b)** Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and **(c)** other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

Seller _____ _Lynda T. Bui, Ch. 7 Trustee_____ Date _9.30.16_

Seller _____ Date _____

Buyer _____ _ZARMINA AZADZOY_ Date _09/20/2016_

Buyer _____ Date _____

Real Estate Broker (Firm) **BROKER OF THE RECORD** _____ CalBRE Lic # _____ Date _____

By _____ CalBRE Lic # _____ Date _____

Real Estate Broker (Firm) **ELITE REO BROKERS** _____ CalBRE Lic # _01786757_ Date _09/20/2016_

By _____ CalBRE Lic # _01786757_ Date _09/20/2016_

**MOHAMMAD AZADZOI**

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**PRBS 11/14 (PAGE 1 OF 1)**



## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

| Reviewed by | Date |
|---|---|

Mohammad Azadzoi 16832 VALLEY SPRING DR RIVERSIDER, CA 92503          Phone: (949)8120484          Fax:          Untitled
JOHN AZADZOI          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

# Exhibit 4


CALIFORNIA
ASSOCIATION
OF REALTORS®

# TABLE OF CONTENTS
## RESIDENTIAL PURCHASE AGREEMENT
### (C.A.R. Form TOC-RPA 11/14)

| Para # | | Page # |
|---|---|---|
| 1. | OFFER | 1 |
| 2. | AGENCY | 1 |
| 3. | FINANCE TERMS | 1 |
| 4. | SALE OF BUYER'S PROPERTY | 2 |
| 5. | ADDENDA AND ADVISORIES | 2 |
| 6. | OTHER TERMS | 2 |
| 7. | ALLOCATION OF COSTS | 2 |
| 8. | ITEMS INCLUDED IN AND EXCLUDED FROM SALE | 3 |
| 9. | CLOSING AND POSSESSION | 4 |
| 10. | STATUTORY AND OTHER DISCLOSURES AND CANCELLATION RIGHTS | 4 |
| 11. | CONDITION OF PROPERTY | 5 |
| 12. | BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY | 5 |
| 13. | TITLE AND VESTING | 5 |
| 14. | TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS | 6 |
| 15. | FINAL VERIFICATION OF CONDITION | 6 |
| 16. | REPAIRS | 7 |
| 17. | PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS | 7 |
| 18. | BROKERS | 7 |

| Para # | | Page # |
|---|---|---|
| 19. | REPRESENTATIVE CAPACITY | 7 |
| 20. | JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER | 7 |
| 21. | REMEDIES FOR BUYER'S BREACH OF CONTRACT | 8 |
| 22. | DISPUTE RESOLUTION | 8 |
| 23. | SELECTION OF SERVICE PROVIDERS | 9 |
| 24. | MULTIPLE LISTING SERVICE ("MLS") | 9 |
| 25. | ATTORNEY FEES | 9 |
| 26. | ASSIGNMENT | 9 |
| 27. | EQUAL HOUSING OPPORTUNITY | 9 |
| 28. | TERMS AND CONDITIONS OF OFFER | 9 |
| 29. | TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES | 9 |
| 30. | DEFINITIONS | 9 |
| 31. | EXPIRATION OF OFFER | 9 |
| 32. | ACCEPTANCE OF OFFER | 10 |
| | CONFIRMATION OF ACCEPTANCE | 10 |
| | REAL ESTATE BROKERS | 10 |
| | ESCROW HOLDER ACKNOWLEDGMENT | 10 |
| | PRESENTATION OF OFFER | 10 |
| | REJECTION OF OFFER | 10 |

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____


EQUAL HOUSING
OPPORTUNITY

**TOC-RPA 11/14 (PAGE 1 OF 1)**

**TABLE OF CONTENTS (TOC-RPA PAGE 1 OF 1)**

Mohammad Azadzoi 16832 VALLEY SPRING DR RIVERSIDER, CA 92503                    Phone: (949)8128484    Fax:    Untitled
JOHN AZADZOI    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

# Exhibit 4

CALIFORNIA
ASSOCIATION
OF REALTORS®

**CALIFORNIA**
**RESIDENTIAL PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/15 )

Date Prepared: *09/20/2016*

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** *ZARMINA AZADZOY* ("Buyer").
   B. **THE REAL PROPERTY** to be acquired is *11412 MORNING STAR, MORENO VALLEY, CA 92557*, situated in
      *MORENO VALLEY* (City), (County), California, *92557* (Zip Code), Assessor's Parcel No. *475121016* ("Property").
   C. **THE PURCHASE PRICE** offered is *Two Hundred Thirty-Nine Thousand*
      Dollars $ *239,000.00*
   D. **CLOSE OF ESCROW** shall occur on ☐ (date)(or ☒ **20 Days** After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
      Listing Agent *BROKER OF THE RECORD* (Print Firm Name) is the agent of (check one):
      ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent *ELITE REO BROKERS* (Print Firm Name) (if not the same as the
      Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
   C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . $ *3,000.00*
      **(1) Buyer Direct Deposit:** Buyer shall deliver deposit directly to Escrow Holder by electronic funds
      transfer, ☐ cashier's check, ☐ personal check, ☐ other within 3 business days
      after Acceptance (or );
      **OR (2) ☐ Buyer Deposit with Agent:** Buyer has given the deposit by personal check (or )
      to the agent submitting the offer (or to ), made payable to
      . The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within **3** business days after Acceptance (or ).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . $
      within **Days** After Acceptance (or ).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
      deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
      RID) at the time the increased deposit is delivered to Escrow Holder.
   C. ☐ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
      obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
      ☐ Buyer shall, within **3 (or )** Days After Acceptance, Deliver to Seller such verification.
   D. **LOAN(S):**
      **(1) FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $
      This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
      ☐ assumed financing (C.A.R. Form AFA), ☐ Other . This loan shall be at a fixed
      rate not to exceed % or, ☐ an adjustable rate loan with initial rate not to exceed %.
      Regardless of the type of loan, Buyer shall pay points not to exceed % of the loan amount.
      **(2) ☐ SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . $
      This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
      financing (C.A.R. Form AFA), ☐ Other . This loan shall be at a fixed rate not to
      exceed % or, ☐ an adjustable rate loan with initial rate not to exceed %. Regardless of
      the type of loan, Buyer shall pay points not to exceed % of the loan amount.
      **(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or )** Days After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.
   E. **ADDITIONAL FINANCING TERMS:** *CASH / LINE OF EQUITY*
   F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . $ *236,000.00*
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. **PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ *239,000.00*

Buyer's Initials ( *Z·A* ) ( )    Seller's Initials ( ) ( )

© 1991-2015, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/15 (PAGE 1 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

# Exhibit 4

Property Address: **11412 MORNING STAR, MORENO VALLEY, CA 92557** _____ Date: **September 20, 2016**

    **H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or _____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

    **I. APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or _____ ) Days** After Acceptance.

    **J. LOAN TERMS:**

        **(1) LOAN APPLICATIONS:** Within **3 (or _____ ) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

        **(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

        **(3) LOAN CONTINGENCY REMOVAL:**
Within **21 (or _____ ) Days** After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

        **(4) ☐ NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

        **(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

    **K. BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**

    **A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

    **OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

    **A. ADDENDA:**

| | |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Addendum #_____ (C.A.R. Form ADM) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

    **B. BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ REO Advisory (C.A.R. Form REO) |
| | ☐ Other |

**6. OTHER TERMS:** _____

_____

_____

**7. ALLOCATION OF COSTS**

    **A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

        **(1)** ☐ Buyer ☐ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____
             prepared by _____

        **(2)** ☐ Buyer ☐ Seller shall pay for the following Report _____
             prepared by _____

        **(3)** ☐ Buyer ☐ Seller shall pay for the following Report _____
             prepared by _____

Buyer's Initials ( _G·A_ ) ( _____ )         Seller's Initials ( _[signature]_ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 2 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Untitled

# Exhibit 4

Property Address: *11412 MORNING STAR, MORENO VALLEY, CA  92557*                    Date: *September 20, 2016*

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**
**(1)** ☐ Buyer ☐ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.
**(2) (i)** ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.
(ii) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.
(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.
**C. ESCROW AND TITLE:**
**(1) (a)** ☒ Buyer ☒ Seller shall pay escrow fee *50 / 50*
(b) Escrow Holder shall be
(c) The Parties shall, within **5 (or         ) Days** After receipt, sign and return Escrow Holder's general provisions.
**(2) (a)** ☐ Buyer ☐ Seller shall pay for **owner's** title insurance policy specified in paragraph 13E
(b) Owner's title policy to be issued by
(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)
**D. OTHER COSTS:**
**(1)** ☐ Buyer ☐ Seller shall pay County transfer tax or fee
**(2)** ☐ Buyer ☐ Seller shall pay City transfer tax or fee
**(3)** ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee
**(4)** Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
**(5)** ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
**(6)** Buyer to pay for any HOA certification fee.
**(7)** ☐ Buyer ☐ Seller shall pay for any private transfer fee
**(8)** ☐ Buyer ☐ Seller shall pay for
**(9)** ☐ Buyer ☐ Seller shall pay for
**(10)** ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $                    , of a standard (or ☐ upgraded) one-year home warranty plan, issued by                    , with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other:
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
OR ☐ **Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.**
**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
**(1)** All EXISTING fixtures and fittings that are attached to the Property;
**(2)** EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☐ all stove(s), except                    ; ☐ all refrigerator(s) except                    ; ☐ all washer(s) and dryer(s), except
**(3)** The following additional items:
**(4)** Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.
**(5) LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
**(6)** Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and                    , and (ii) are transferred without Seller warranty regardless of value.
**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii)
                    . **Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).**

Buyer's Initials (  *S-H* ) (         )                    Seller's Initials (         ) (         )

**RPA-CA REVISED 12/15 (PAGE 3 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                    Untitled

# Exhibit 4

Property Address: **11412 MORNING STAR, MORENO VALLEY, CA 92557**          Date: **September 20, 2016**

**9. CLOSING AND POSSESSION:**
   A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   B. **Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) at 6 PM or ( ☐ AM/ ☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than _____ calendar days after Close Of Escrow; or (iii) ☐ at _____ ☐ AM/ ☐ PM on _____.
   C. **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.
   D. **Tenant-occupied property: Property shall be vacant at least 5 (or _____ ) Days** Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
   OR ☐ **Tenant to remain in possession** (C.A.R. Form TIP).
   E. At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.
   F. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**
   A. **(1)** Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (ii) unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).
      **(2)** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.
      **(3) Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.
      **(4)** Within the time specified in paragraph 14A, **(i)** Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); or **(ii)** if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).
      **(5)** Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.
      **(6)** In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**
      **(7)** If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.
   B. **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: **(i)** Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; **(ii)** disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.
   C. **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).
   D. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)
   E. **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.
   F. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
      **(1)** SELLER HAS: 7 (or _____ ) **Days** After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( _____ ) ( _____ )                    Seller's Initials ( _____ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 4 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 4 OF 10)**

# Exhibit 4

Property Address: **11412 MORNING STAR, MORENO VALLEY, CA 92557**                    Date: **September 20, 2016**

**(2)** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ____) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). **(vi)** private transfer fees; **(vii)** Pet fee restrictions; and **(viii)** smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing **(i)** the Property is sold **(a)** "AS-IS" in its PRESENT physical condition as of the date of Acceptance and **(b)** subject to Buyer's Investigation rights; **(ii)** the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and **(iii)** all debris and personal property not included in the sale shall be removed by Close Of Escrow.

   **A.** Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.

   **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: **(i)** cancel this Agreement; or **(ii)** request that Seller make Repairs or take other action.

   **C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

   **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: **(i)** a general physical inspection; **(ii)** an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** inspect for lead-based paint and other lead-based paint hazards; **(iv)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); **(v)** review the registered sex offender database; **(vi)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and **(vii)** review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

   **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

   **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

   **D. Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

   **A.** Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

   **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: **(i)** monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and **(ii)** those matters which Seller has agreed to remove in writing.

   **C.** Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

   **D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials ( ___ ) ( ___ )                                    Seller's Initials ( ___ ) ( ___ )

**RPA-CA REVISED 12/15 (PAGE 5 OF 10)**

# Exhibit 4

Property Address: **11412 MORNING STAR, MORENO VALLEY, CA  92557** _____ Date: **September 20, 2016**

E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

A. **SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

B. **(1) BUYER HAS: 17 (or ____ ) Days** After Acceptance, unless otherwise agreed in writing, to: **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.

**(2)** Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

**(3)** By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

**(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

**(5)** Access to Property: Buyer shall have access to the Property to conduct inspections and investigations for **17 (or ____ ) Days** After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

C. ☐ **REMOVAL OF CONTINGENCIES WITH OFFER: Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.**

D. **SELLER RIGHT TO CANCEL:**

**(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

**(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first Delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B5; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 10A(5); or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

F. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

G. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds** (Civil Code §1057.3).

Buyer's Initials ( _E.A._ ) ( _____ )          Seller's Initials ( _JB_ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 6 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 6 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Untitled

# Exhibit 4

Property Address: **11412 MORNING STAR, MORENO VALLEY, CA 92557**    Date: **September 20, 2016**

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or [  ] ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 11; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**16. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**17. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**18. BROKERS:**
    **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

    **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**19. REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity **(i)** represents that the entity for which that party is acting already exists and **(ii)** shall Deliver to the other Party and Escrow Holder, within **3 Days** After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**20. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
    **A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within **3 (or [  ] ) Days**, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.

    **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit (see Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( *T-A* ) ( _____ )    Seller's Initials ( _____ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 7 OF 10)**
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 7 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    Untitled

# Exhibit 4

Property Address: **11412 MORNING STAR, MORENO VALLEY, CA 92557**                    Date: *September 20, 2016*

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

21. **REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

- Buyer's Initials _F.A_ / _____                    Seller's Initials _JB_ / _____

22. **DISPUTE RESOLUTION:**

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties **also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker.** Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. **Exclusions from this mediation agreement are specified in paragraph 22C.**

B. **ARBITRATION OF DISPUTES:**
The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

- Buyer's Initials _F.A_ / _____                    Seller's Initials _____ / _____

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**
(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

- Buyer's Initials ( _F.A_ ) ( _____ )                    Seller's Initials ( _JB_ ) ( _____ )

RPA-CA REVISED 12/15 (PAGE 8 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 8 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com                    Untitled

# Exhibit 4

Property Address: **_11412 MORNING STAR, MORENO VALLEY, CA 92557_**          Date: **_September 20, 2016_**

    (2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

    (3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

**23. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**24. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**25. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

**26. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

**27. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**28. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**29. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:**     Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**30. DEFINITIONS:** As used in this Agreement:

    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

    B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

    C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

    D. **"Close Of Escrow"**, including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.

    E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

    F. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

    G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

    H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

    I. **"Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).

    J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

    K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

    L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

    M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by [_____] AM/ PM, on _____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date **_09/20/2016_**     BUYER _Zarmina Azadzoy_ _____
(Print name) **ZARMINA AZADZOY**
Date _____     BUYER _____
(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials (_____ ) ( _____ )

**RPA-CA REVISED 12/15 (PAGE 9 OF 10)**

# Exhibit 4

Property Address: **11412 MORNING STAR, MORENO VALLEY, CA 92557**          Date: **September 20, 2016**

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO)** DATED:
_____

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date **9.30.16**          SELLER _____
**(Print name)** _____

Date _____          SELLER _____
**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ )  **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
  (Initials)       personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
          ☐ AM/ ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.**

---

**REAL ESTATE BROKERS:**
A. **Real Estate Brokers are not parties to the Agreement between Buyer and Seller.**
B. **Agency relationships are confirmed as stated in paragraph 2.**
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) **ELITE REO BROKERS**                CalBRE Lic. # **01786757**
By _____ **MOHAMMAD AZADZOI** CalBRE Lic. # **01786757**   Date **09/20/2016**
By _____                CalBRE Lic. # **01786757**   Date **09/20/2016**
Address **16832 VALLEY SPRING DR**          City **RIVERSIDE**      State **CA**   Zip **92503**
Telephone **(949)812-0484**    Fax _____    E-mail **johnreobrokers@gmail.com**
Real Estate Broker (Listing Firm) **BROKER OF THE RECORD**                CalBRE Lic. # _____
By _____                CalBRE Lic. # _____   Date _____
By _____                CalBRE Lic. # _____   Date _____
Address _____          City _____      State _____   Zip _____
Telephone _____    Fax _____    E-mail _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked) ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and
_____ , and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____                Escrow # _____
By _____                Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
            Broker or Designee Initials

---

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
            Seller's Initials

---

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer Acknowledges that page 10 is part of this Agreement ( _____ )( _____ )
                                    **Buyer's Initials**

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
●525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____
Broker or Designee

**RPA-CA REVISED 12/15 (PAGE 10 of 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com          Untitled

# Exhibit 4

CALIFORNIA
ASSOCIATION
OF REALTORS®

## BUYER'S INSPECTION ADVISORY
### (C.A.R. Form BIA, Revised 11/14)

Property Address: **11412 MORNING STAR, MORENO VALLEY, CA 92557**                                    ("Property").

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3.   YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMIITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

  **A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

  **B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

  **C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

  **D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

  **E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS;WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

  **F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

  **G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

  **H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

  **I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

  **J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

  **K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

  **L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.**

Buyer _____                Buyer _____
        ZARMINA AZADZOY

© 1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**BIA REVISED 11/14 (PAGE 1 OF 1)**

## BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)

Mohammad Azadzoi 16832 VALLEY SPRING DR RIVERSIDER, CA 92503                        Phone: (949)8120484                Fax:                        Untitled
JOHN AZADZOI
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

# Exhibit 4



## Purchase & Sale of Real Property Contract Addendum

11412 Morning Star Lane Moreno Valley, CA 92557

### Property Address

1   Buyer acknowledges that this property is subject to Short Sale Lender Approval & Bankrupt Court Approval.

2   The Bankruptcy Estate Fee is to be paid by the Sellers proceeds or through a buyer's premium and made payable to the Bankruptcy Estate.

3   Buyer acknowledges that the property is sold "AS IS". Absolutely no repairs will be authorized. The Seller is unable to remove any debris or personal property left on the Property and does not warrant that there will be any appliances or other personal property left on the Property.

4   Seller shall make no concessions and can pay no closing costs for the buyer.

5   Escrow will be opened with:

| | |
|---|---|
| COMPANY NAME | A & A Escrow Services, Inc. |
| ADDRESS | 415 N. Crescent Drive, Suite 320 |
| CITY, STATE, ZIP | Beverly Hills, CA 90210 |
| PHONE | (310) 550-6055 X 25 |
| EMAIL | antonia@aaescrow.com |

6   Earnest money deposit will be no less than 1% of the purchase price. Upon acceptance, earnest money will be deposited with the Escrow/Title Company in the form of a cashier's check or bank wire within 48 hours of acceptance.

7   The Seller in this transaction is exempt from providing the Home Owner's Association documents, as this is a court-ordered sale. Buyer will be solely responsible for any application, transfer, capital contributions and initial membership fees charged by the Association. Buyer is aware it may take up to 10 days to receive a response from the Federal Bankruptcy Trustee (Seller).

8   Buyer may cancel the Residential Purchase Agreement for any reason without penalty   any time after 120 days from Seller's acceptance date, if Short Sale Investor Approval has not been received.

9   Upon Investor approval of sale, buyer shall be prepared to close escrow within 45 days. Upon Bankruptcy Court Approval of sale, buyer agrees to close escrow per Federal   Bankruptcy Trustee instructions.

# Exhibit 4

11   Buyer shall be responsible for the connection of utilities to perform inspections/final walk through pursuant to the Residential Purchase Agreement.

12   Buyer acknowledges that the seller may not have access to garage remotes, mailbox keys or access related keys to property.  Seller will tender any items available at the close of escrow but shall not be liable to provide items not in his/her possession.

13   Buyer shall immediately disclose if he/she is related to the debtor. Buyer understands that most investors require an Arm's Length Disclosure, and some investors will not allow a family relation to purchase a property in which a related debtor may have interest.

14   Should buyer be representing self as an agent, buyer understands that some investors will not allow Buyer(s) to receive any funds or commissions from the sale of the property.

15   Property must be purchased in an individual name or LLC. Offers in the name of a corporation, trust or partnership are not acceptable. If purchased by an LLC, buyer shall provide a copy of the articles of organization to include authority of signer to sign on behalf of the LLC.

16   Seller will not pay for Appraisal and/or Home Warranty.

Buyer understands and agrees that this addendum shall take precedence where any terms conflict with the original Residential Purchase Agreement.

DATED this   29 day of       09 , 201 6

**Trustee**

_____
Signature

Lynda T. Bui, Ch. 7 Trustee

Print Name

**Buyer**

_____
Signature

ZARMINA AZADZOY

Print Name

Vice President

Title

**Buyer**


Signature


Print Name


Title

# Exhibit 4



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/15)

No. *1*

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____,
dated _____*February 13, 2017*_____ , on property known as _____*11412 Morning Star Ln*_____
_____*Moreno Valley, CA 92557*_____
in which _____*GLOBAL AZ INVESTING*_____ is referred to as ("Buyer/Tenant")
and _____*SELLER OF THE RECORD*_____ is referred to as ("Seller/Landlord").

*THE BUYER WILL PAY FOR THE CHARGES FOR THE FOLLWOING ITEMS:*
*1. MESSENGER FEE,*
*2. TITLE WIRE FEE CHARGES,*
*3. TITLE ESCROW AND SUBESCROW CHARGES*
*4. AND FILE ARCHIVE.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date *February 13, 2017*_____

Buyer/Tenant _____
*GLOBAL AZ INVESTING*

Buyer/Tenant _____

Date *2/24/17*_____

Seller/Landlord _____
*SELLER OF THE RECORD*

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**ADM REVISED 12/15 (PAGE 1 OF 1)**

Reviewed by _____ Date _____

EQUAL HOUSING
OPPORTUNITY

**ADDENDUM (ADM PAGE 1 OF 1)**

Mohammad Azadzoi 16832 VALLEY SPRING DR RIVERSIDER, CA 92503                                   Phone: (949)8120484          Fax:                        Untitled
JOHN AZADZOI                        Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

# Exhibit 4

CALIFORNIA
ASSOCIATION
OF REALTORS ®

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/15)

No. *3*

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____,
dated *September 28, 2016* , on property known as *11412 Morning Star*
*Moreno Valley , Ca 92557*
in which *Zarmina Azadzoy* is referred to as ("Buyer/Tenant")
and *Seller of the record* is referred to as ("Seller/Landlord").

*1. The buyer's agent to be Hasam Ashraf.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date *February 28, 2017*

Buyer/Tenant _____
*Zarmina Azadzoy*

Buyer/Tenant _____

Date *3/1/17*

Seller/Landlord _____
*Seller of the record*

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
| --- |

EQUAL HOUSING OPPORTUNITY

**ADM REVISED 12/15 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

Mohammad Azadzoi 16832 VALLEY SPRING DR RIVERSIDER, CA 92503 Phone: (949)8120484 Fax: addendum morni
JOHN AZADZOI Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

# Exhibit 4

# Exhibit 5
# Approval Letter



| Account Information | |
|---|---|
| **Online:** | Wellsfargo.com |
| **Fax:** | 1-866-969-0103 |
| **Telephone:** | 1-866-234-8271 |
| **Correspondence:** | PO Box 10335 |
| | Des Moines, IA 50306 |
| **Hours of Operation:** | Mon-Thu, 7:00 AM– 9:00 PM |
| | Fri, 7:00 AM – 8:00 PM |
| | Sat, 8:00 AM – 4:00 PM |
| | Central Time |
| **Loan Number:** | ██████6153 |
| **Property Address:** | 11412 MORNING STAR LN |
| | MORENO VALLEY, CA 92557-5502 |

03/17/2017

David K Shono
Sheila L Shono
11412 MORNING STAR LN
MORENO VALLEY, CA 92557-5502

PLEASE NOTE:  This notice is being provided for informational purposes only.  As a result of at least one bankruptcy case filing that included the above referenced account, Wells Fargo Home Mortgage  is NOT attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer(s) who is impacted by an active bankruptcy case or has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge.  THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS TO THESE CUSTOMER(S).
Your decision to discuss workout options with Wells Fargo Home Mortgage is strictly voluntary.  You are not obligated to pursue any workout options discussed with us.  At your request, we will immediately terminate any such discussions should you no longer wish to pursue these options.

Subject:      Notice of short sale status on your mortgage
              Projected closing date: 05/16/2017

Dear David K Shono and Sheila L Shono:

**We're writing to** let you know that we have conditionally approved you for a short sale on the property referenced above.  The following notice of short sale approval will provide all of the conditions and requirements that must be met before the short sale transaction can be finalized.

**What you need to know about a short sale**
With a short sale, you may have the option to sell your home for less than the amount owed on your mortgage.  By doing this, you will be released from your obligation to pay back your primary mortgage under its original terms.  And as your mortgage servicer, Wells Fargo Home Mortgage will accept the proceeds of the sale as payment in full.

As the homeowner, you may be able to:
- Avoid a foreclosure sale
- Stay in your home until the new owner closes, giving you time to make other living arrangements
- Pay no fees — all closing costs and real estate agent fees will be paid by Wells Fargo Home Mortgage

# Exhibit 5

- Eliminate your loan debt
- Receive relocation assistance that helps you transition out of the home

**Conditions you must meet to complete a short sale**

Your short sale approval is based on the purchase contract between David K Shono, Sheila L Shono, the seller(s), and Zarmina Azadzoy, the buyer(s), for a purchase price of $239,000.00. The minimum amount we must receive for the sale of the property after all deductions have been made is called the **acceptable net sale proceeds amount**. The terms of our approval and instructions to you and your closing agent are as follows:

**Section one — transaction overview**

1. The acceptable net sale proceeds amount is $190,951.70.

2. The following transaction details summarize the information noted above:

| | |
|---|---|
| Approved purchase price: | $239,000.00 |
| Acceptable net sale proceeds amount: | $190,951.70 |
| Borrower payment: | |
| Cash at closing: | $0.00 |

**Section two — approved seller closing costs**

Approved Seller Closing Costs:

| | |
|---|---|
| Real Estate Commission: | $14,340.00 |
| Title Fee | $1,000.00 |
| Borrower Relocation | $10,000.00 |
| Title Insurance | $936.00 |
| Transfer Tax | $262.90 |
| Recording Fee | $50.00 |
| BK Estate Fee | $12,000.00 |
| Court Ordered Fee | $150.00 |
| Real Estate Taxes | $1,350.70 |
| Franchise Tax Board | $7,958.70 |

Excess funds, if any, must be paid to Wells Fargo Home Mortgage

**Section three — before we can finalize your short sale**

- Acknowledge and waive any and all rights to any escrow balance, insurance proceeds, or refunds from prepaid expenses.

- You, or any other party, cannot receive any sale proceeds or any funds as a result of this transaction except as specified in this notice.

- The purchase contract may not be amended without Wells Fargo Home Mortgage prior written approval.

- Ensure that any relationship among a participating broker/real estate agent has been disclosed prior to issuing this notice of short sale approval (unless the property is secured by a VA loan). This transaction may not close if it involves any third party who received a deed from the borrower/seller at, before, or after closing, and the purchase contract may not be assigned.

# Exhibit 5

In addition, the sale must be an "arm's length transaction". This means the parties to the transaction (buyer, seller, and their respective agents) cannot have a close personal or business relationship. Also, the buyer and seller, and/or any agent of the buyer or seller, cannot knowingly misrepresent the fair market value of the property during this sale/purchase of the property. Any knowing violation of the arm's length transaction requirement or misrepresentation of the fair market value may cause this approval to be void and Wells Fargo Home Mortgage may pursue available remedies at law.

- If you have any home equity loans, lines, junior liens or other subordinate liens (like a tax or mechanic's lien) on your property, they will be considered separately from your transaction. To ensure the short sale proceeds smoothly, it is essential for you to begin working with any other creditors immediately after being approved for a short sale. If you do not resolve transactions with other lien holders it could cause delays or even cancelation of the short sale closing.

- All parties to the transaction must agree to the conditions of the short sale affidavit. If any party of the transaction does not agree to the conditions of the short sale affidavit and complete the document as allowed by applicable law, this notice of approval will be null and void. The short sale affidavit must be completed and returned to Wells Fargo Home Mortgage prior to the closing date. This affidavit can be sent by fax or mail:

  Fax:    1-866-969-0103

  Mail:   Wells Fargo Home Mortgage
          1000 Blue Gentian Road, Suite 300
          MAC X9999-01N
          Eagan, MN 55121

- If you're involved in a bankruptcy, please understand that additional court consent may be needed, if consent is not provided it may prevent us from completing the short sale. If you have questions, please consult with your bankruptcy attorney.

- This notice of short sale approval is contingent upon confirming that Zarmina Azadzoy meets any required re-sale deed restrictions defined by the mortgage or deed of trust for the above mentioned property.

- If you do not comply with any of the conditions/requirements included in this notice, it results in our refusal to issue a satisfaction, release, or conveyance of your mortgage.

- In accordance with state and local laws, this conditional approval may be voided at any time (at the discretion of Wells Fargo Home Mortgage).

- You, as the seller, must advise your closing agent that they must contact us no later than 48 hours before the scheduled closing date and provide a copy of the final closing disclosure. The final closing disclosure must comply with the approval terms included in this notice and must contain complete buyer and seller information, including a forwarding address for the seller. In addition, the closing agent must provide the fully executed HUD Closing Worksheet for FHA loans. If closing is delayed and/or rescinded, we must be notified immediately to review the request and provide written approval, if granted per investor or mortgage insurance guidelines.

- In addition, you as the seller, for and in consideration of the approval, closing, and funding of the short sale, agree that you will re-sign any documents after closing if any corrections are needed. These corrections may be due to any typographical or clerical errors discovered in any or all of the closing documentation required to be signed at the time of closing.

- The acceptable net sales proceeds, together with any excess funds, must be wired to:
  Wells Fargo Home Mortgage
  Account No.: ███████

# Exhibit 5

ABA No. ▆▆▆▆▆▆▆
Special Information for Beneficiary:
Apply funds to loan: ▆▆▆▆▆▆06153
From: Sender's name, phone number

Please note: The above information is mandatory and if not provided, the wire will be rejected.

- After certified funds are received and approval is final, a document releasing the mortgage will be sent to record this decision.

- The closing documents should be faxed to 1-866-969-0103 on the closing date.

**What you need to know about transition incentives**
- To help you with this transition you will receive $10,000.00 to be paid at closing for your relocation assistance.  If you're also receiving relocation assistance from a third party that has not yet been disclosed to Wells Fargo Home Mortgage, the amount you receive from us may be reduced by the amount received from this third party.

**What you need to know about any remaining balance on your loan**
- The estimated amount of total debt outstanding as of the date of this letter is $316,319.46.

- Because, with a short sale transaction, the home is sold for less than the total debt outstanding, there may be a deficiency balance.  This is the dollar difference between the total debt outstanding and the acceptable sale proceeds amount.  The estimated deficiency balance as of the date of this letter is $125,367.76.

- Please take note that the investor (and all other interested parties) on your loan, in releasing its security interest in this real property, waives the right to collect that amount that constitutes full payment of the secured debt.

- Wells Fargo Home Mortgage will notify the major credit reporting agencies to reflect this loan as "account paid in full with less than full balance," which should appear on your credit report following the completion of the short sale.  However, Wells Fargo Home Mortgage is not a reporting agency and cannot control how or when the report will reflect information to other users of credit reports.

- Wells Fargo Home Mortgage will report amounts of debt that have been cancelled to the IRS, if required to do so under IRS regulations.

**What you need to know about foreclosure**
- If you obtained this approved purchase offer within your marketing period or if this is the first purchase offer you have submitted and no marketing period was provided, then the terms of the foreclosure protection that we have previously communicated to you are still applicable until the short sale closing date referenced above in the subject line of this letter.

# Exhibit 5

- However, if this approved purchase offer was obtained after your marketing period expired or if no marketing period was provided and this is not the first purchase offer you have submitted for our approval, then it is important to understand that the foreclosure process may begin or continue during the time you are actively working towards completing the short sale. If your mortgage has been referred to foreclosure, you may receive notices from a third-party attorney delivered by mail, a foreclosure sale date may be scheduled and you may see steps being taken to proceed with a foreclosure sale of your home. We will make every attempt to postpone any foreclosure sale that is scheduled to occur before the short sale closing date referenced above in the subject line of this letter. If you have a foreclosure sale that is scheduled to occur after the short sale closing date referenced above and you do not complete the short sale before that date, then the foreclosure sale will be held as scheduled.

**I'm here to help**
I look forward to working with you, and encourage you to call me at the phone number below if you have any questions about the information in this letter.

Sincerely,

**RODNEY ALBERTUS**
Home Preservation Specialist
Phone: 855-844-4527 ext. 1335029351

Fax: 1-866-969-0103

**Contact us**
If you'd like to request information, notify us of an error, or share any concerns you may have about the servicing of your loan, please contact us at P.O. Box 10335, Des Moines, IA 50306.
Please include your account number with all correspondence.

Get free counseling to help manage expenses and avoid foreclosure. Reach out to a local HUD-approved, non-profit housing counseling agency if you're struggling to keep up with monthly expenses, or want help to avoid foreclosure. At no cost, a counselor will work closely with you, providing the information and assistance you need. To find an agency near you, go to www.hud.gov/offices/hsg/sfh/hcc/fc. Or call 1-800-569-4287 (TDD 1-800-877-8339). You can also call HOPE Hotline at 1-888-995-HOPE (4673).

Be sure you avoid anyone who asks for a fee for counseling or a loan modification, or asks you to sign over the deed to your home, or to make your mortgage payments to anyone other than Wells Fargo Home Mortgage.

Wells Fargo Home Mortgage cannot dispense tax or legal advice. Please consult a tax advisor and/or attorney regarding any consequences associated with a short sale or deed in lieu of foreclosure, sometimes referred to as a Mortgage Release.

The mortgage must be in default on the date the pre foreclosure short sale transaction closes, pursuant to Section 204 of the National Housing Act (12 U.S.C. 1710 (1)D): pre foreclosure short sale and deed in lieu of foreclosure (DIL) transactions are generally reported to credit bureaus, and will likely affect the mortgagor's ability to obtain another mortgage and other types of credit: if the mortgagor is a servicemember, it is recommended that the mortgagor obtain guidance from his/her employer regarding the pre foreclosure short sale or deed in lieu of foreclosure impact on his/her security clearance and employment: and pre foreclosure short sale and deed in lieu of foreclosure transactions are generally reported to the Credit Alert Interactive Voice Response System (CAIVRS) which may result in his/her inability to obtain government financing or affect other government benefits for a certain period of time.

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. ©2016 Wells Fargo Bank, N. A. All rights reserved. NMLSR ID 399801

# Exhibit 5

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: **100 Spectrum Center Drive, Suite 600, Irvine, California  92618**

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER: (1) AUTHORIZING THE SHORT SALE OF REAL PROPERTY OF THE ESTATE PURSUANT TO BANKRUPTCY CODE FREE AND CLEAR OF LIENS PURSUANT TO §§ 363(b) AND 363(f); (2) APPROVING PAYMENT OF REAL ESTATE COMMISSION; AND (3) GRANTING RELATED RELIEF INCLUDING USE OF SALE PROCEEDS TO REIMBURSE TRUSTEE FOR ACTUAL COSTS INCURRED;  MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF LYNDA T. BUI AND MATT VANDERBEEK IN SUPPORT THEREOF**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **March 23, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Lynda T. Bui (TR)**    trustee.bui@shbllp.com, C115@ecfcbis.com  *Chapter 7 Trustee*
- **Scott W Hanssler**    swh@hansslerlaw.com  *Attorney for the Debtors*
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov  *United States Trustee*
- **Kristin A Zilberstein**    bknotice@mccarthyholthus.com,    kzilberstein@mccarthyholthus.com, kzilberstein@ecf.inforuptcy.com  *Attorney for Wells Fargo Bank N.A.*

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **March 23, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Judge's Copy**
**Honorable Meredith A. Jury, US Bankruptcy Court, 3420 Twelfth St, Suite 325, Riverside, CA 92501**

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)    **Not Applicable**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 23, 2017 | Lorre Clapp | /s/ Lorre Clapp |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                      **F 9013-3.1.PROOF.SERVICE**

## U.S. MAIL SERVICE LIST

- **Buyer:** Global AZ Investing, Zamina Azadzoy, Vice President, 3005 Briarhaven, Corona CA 92882
- **Trustee's Broker:**  Pro Realty Group, Matt Vanderbeek, 54 Endless Vista, Aliso Viejo, CA 92656
- **Buyer's Broker:**  Elite REO Brokers, Hasam Ashraf, 342 Corporate Terrace Cir, Corona, CA 92879
- **Secured Creditor:**  Wells Fargo Home Mortgage, Attn President, PO Box 10335, Des Moines, IA 50306
- **Title Report Lien:** World Savings Bank FSB, Attn President, 1901 Harrison Street, Oakland, CA 94612
- **Title Report Lien:** Quality Loan Service Corporation, Attn President, 411 Ivy Street, San Diego, CA 92101
- **Title Report Lien:** Encore Credit Corp, Attn President, 1833 Alton Parkway, Irvine, CA 92606
- **Riverside County Tax Collector:**  Riverside County Tax Collector,  4080 Lemon St., 4th Floor, Riverside, CA 92501

## Court Mailing List:

**DEBTORS**
DAVID K SHONO
SHEILA L SHONO
11412 MORNING STAR LN.
MORENO VALLEY, CA 92557-5502

**COURT MAILING LIST**
FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS: A-340
P.O. BOX 2952
SACRAMENTO, CA 95812-2952

**COURT MAILING LIST**
AMERICAN HONDA FINANCE
6261 KATELLA AVE STE 1A
CYPRESS, CA 90630

**COURT MAILING LIST**
CAPITAL ONE
PO BOX 6000
SEATTLE, WA 98190-0001

**COURT MAILING LIST**
GECRB/CARE CREDIT
950 FORRER BLVD
KETTERING, OH 45420-1469

**COURT MAILING LIST**
KEY BANK
P.O. BOX #6534
THE LAKES, NV 88901-0001

**COURT MAILING LIST**
CITIBANK
PO BOX 790034
ST LOUIS MO 63179-0034

**COURT MAILING LIST**
WFHM
4101 WISEMAN BLVD # MC-T
SAN ANTONIO, TX 78251-4200

RETURNED MAIL

**UNITED STATES TRUSTEE**
UNITED STATES TRUSTEE (RS)
3801 UNIVERSITY AVENUE, SUITE 720
RIVERSIDE, CA 92501-3255

**COURT MAILING LIST**
WELLS FARGO BANK, N.A.
C/O MCCARTHY & HOLTHUS, LLP
1770 FOURTH AVENUE
SAN DIEGO, CA 92101-2607

**COURT MAILING LIST**
|AMERICAN INFOSOURCE LP AS AGENT
FOR
T MOBILE/T-MOBILE USA INC
PO BOX 248848
OKLAHOMA CITY, OK  73124-8848

**COURT MAILING LIST**
CAPITAL ONE
PO BOX #6000
SEATTLE, WA 98190-0001

**COURT MAILING LIST**
GECRB/CARE CREDIT
PO BOX 981439
EL PASO, TX 79998-1439

**COURT MAILING LIST**
QUANTUM3 GROUP LLC AS AGENT FOR
JH PORTFOLIO DEBT EQUITIES LLC
PO BOX 788
KIRKLAND, WA 98083-0788

**COURT MAILING LIST**
S M C/DANIELS JEWELERS
PO BOX 3750
CULVER CITY, CA 90231-3750

**NOTICE PURPOSES - RULE 5003(E)
ADDRESS**
INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA, PA 19101-7346

**UNDELIVERABLE**
CHASE

**COURT MAILING LIST**
EMPLOYMENT DEVELOPMENT DEPT.
BANKRUPTCY GROUP MIC 92E
P.O. BOX 826880
SACRAMENTO, CA 94280-0001

**COURT MAILING LIST**
AMERICAN HONDA FINANCE
P O BOX 168088
IRVING TX 75016-8088

**COURT MAILING LIST**
BANK OF AMERICA
P.O. BOX 6603
HAGERSTOWN, MD 21741-6603

**COURT MAILING LIST**
FIRST PREMIER BANK
601 S MINNESOTA AVE
SIOUX FALLS, SD 57104-4868

**COURT MAILING LIST**
HSBC BANK
PO BOX 30253
SALT LAKE CITY, UT 84130-0253

**COURT MAILING LIST**
RADIOSHACK
PO BOX 9025
DES MOINES, IA 50368

**COURT MAILING LIST**
VERIZON
500 TECHNOLOGY DR STE 30
WELDON SPRING, MO 63304-2225

**UNDELIVERABLE**
RIVERSIDE DIVISION
3420 TWELFTH STREET,
RIVERSIDE, CA 92501-3819

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**

**8/24/16 RTS UTF**
**COURT MAILING LIST**
PROVIDIAN/ALLIEO INTERNATIONAL
CRED
P.O. BOX 950
SANTA CLARITA, CA 91380

**9/13/16 UAA**
**COURT MAILING LIST**
WFS FINANCIAL
O.O. BOX 51470
ONTARIO, CA 91761

**8/31/16 RTS NSA**
**COURT MAILING LIST**
CAPTIAL ONE
P.O. BOX #6000
SEATTLE, WA 98190-0001

**9/13/16 RTS UTF**
**COURT MAILING LIST**
CAP ONE
26525 N RIVERWOODS BLVD
METTAWA, IL 60045-3439

**9/12/16 RTS UTF**
**COURT MAILING LIST**
MSM/DJMRMS
3431 EAST WILLIAMS BLVD.
SUITE 200
TUCSON, AZ 85732

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**